(No. 61517.—

CAROL L. PURTILL, Appellant, v. J. H. HESS
*et al.*, Appellees.

*Opinion filed February 6, 1986.*

230

SIMON, J., took no part.

Segall Law Offices, P.C., of Champaign, for appellant.

Craig J. Causeman, of Thomas, Mamer & Haughey, of Champaign, for appellee George Elfers.

James C. Kearns and Michael E. Raub, of Heyl, Royster, Voelker & Allen, of Urbana, for appellee J. H. Hess.

JUSTICE RYAN delivered the opinion of the court:

This medical malpractice action was instituted by the plaintiff, Carol L. Purtill, for damages occasioned by the alleged negligence of the defendants, George Elfers, M.D., J. H. Hess, M.D., and Gibson Community Hospital, in the care, diagnosis, and treatment of the plaintiff during and following the birth of her child. The circuit court of Champaign County granted motions for summary judgment in favor of defendants Elfers and Gibson Community Hospital, on the ground that plaintiff's complaint was barred by the applicable statute of limitations. The circuit court also entered summary judgment in favor of defendant Hess on the basis of plaintiff's failure to affirmatively demonstrate the ability to offer competent expert testimony at trial concerning the applicable standard of medical care. (See 87 Ill. 2d R. 191; *Bartimus v. Paxton Community Hospital* (1983), 120 Ill. App. 3d 1060.) The appellate court affirmed the circuit court's entry of summary judgment in favor of the defendants

in an unpublished Rule 23 order (87 Ill. 2d R. 23). (128 Ill. App. 3d 1162.) We granted plaintiff's petition for leave to appeal (94 Ill. 2d R. 315). After oral argument, a brief *amicus curiae* was filed on behalf of Dr. Hess by the Illinois State Medical Society. This appeal involves only defendant Hess. No question has been raised in this court concerning the ruling of the trial and appellate courts on the statute of limitations issue.

On July 3, 1979, plaintiff gave birth to a child at Gibson Community Hospital in Gibson City. Dr. George Elfers, a licensed Illinois physician and surgeon practicing in McLean County, in the course of delivering the baby, performed a midline episiotomy, a surgical incision of the vulva. (Stedman's Medical Dictionary 474 (5th ed. 1982).) This incision allows delivery to occur without the tearing of the tissues which support the rectum and bladder, and prevents excessive stretching as the newborn passes through the vagina. 5B Lawyers' Medical Cyclopedia of Personal Injuries & Allied Specialties sec. 37.7d (1972).

While performing the episiotomy, however, Dr. Elfers allegedly lacerated or tore the tissue between plaintiff's rectum and vagina. During the weeks following the delivery, plaintiff was examined by her family physician, Dr. J. H. Hess, a licensed Illinois physician practicing in Rantoul, in Champaign County. Dr. Hess' medical records indicated that he examined plaintiff in the area of her vagina and in the area of the episiotomy on July 9, August 9, and August 19 of 1979. Dr. Hess noted in his records that the scar left by the episiotomy seemed to be healing satisfactorily.

Approximately four months following the delivery, plaintiff began to experience the passing of fecal matter and flatulence from her vaginal opening. Plaintiff sought the medical advice of Dr. Hess. There is conflicting evidence in the record as to the exact number of occasions

plaintiff consulted Dr. Hess. Plaintiff testified that she sought Dr. Hess' medical advice either by phone or by office visit on at least four occasions. Dr. Hess' notes and medical records indicated that the plaintiff first consulted him on September 19, 1980. In any event, the record established that between October of 1979 and February of 1981, plaintiff sought the medical advice of Dr. Hess, complaining only of vaginal irritation and discharge. Dr. Hess diagnosed plaintiff's condition during this period as a yeast infection and treated her with a topical ointment and vaginal suppositories. Plaintiff's problem, however, did not abate, and her condition deteriorated, proving particularly bothersome during her menstrual period.

Finally, on February 12, 1981, plaintiff informed Dr. Hess that she was passing fecal matter and flatulence through her vaginal opening. After a vaginal examination, Dr. Hess diagnosed the existence of a rectovaginal fistula at the site of the episiotomy performed by Dr. Elfers. A rectovaginal fistula is an abnormally formed canal or passage leading from the rectum to the vagina. (Stedman's Medical Dictionary 530-31 (5th ed. 1982).) A fistulous opening is formed by "the failure in the healing process of a penetrating wound." (2 Attorneys' Dictionary of Medicine and Word Finder (MB) No. 609, at F-52 (1984).) Dr. Hess referred plaintiff to Dr. Lewis Trupin, a licensed Illinois gynecological specialist practicing in Champaign. Dr. Trupin examined plaintiff in June of 1981. Plaintiff subsequently underwent surgery at Burnham City Hospital in July of 1981. Dr. Trupin repaired the fistula and the third degree laceration in her rectal tissue allegedly resulting from an obstetrical injury during the episiotomy and delivery of plaintiff's child.

On February 14, 1983, plaintiff filed a three-count complaint in the circuit court of Champaign County,

seeking damages for injuries allegedly sustained by her as a result of negligent medical diagnosis and treatment by the defendants. Count I of the complaint, which was directed against Dr. Hess, alleged that he negligently failed to properly diagnose the presence of, or the formation of, two rectovaginal fistulae following child delivery on July 3, 1979, failed to use proper techniques in the presence of plaintiff's complaints, delayed in taking necessary steps to arrive at a proper diagnosis of plaintiff's condition of ill-being, and failed to refer plaintiff to a properly qualified gynecological specialist capable of diagnosing her condition. Count II was directed against Dr. Elfers, and count III was against the hospital. The trial court granted summary judgment in favor of the defendants as to counts II and III, holding that the statute of limitations had run. The appellate court affirmed. That issue has not been raised in this court.

On September 8, 1983, Dr. Hess filed a motion for summary judgment pursuant to section 2—1005 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005), on the ground that there was no genuine issue as to any material fact in the action and that he was entitled to summary judgment as a matter of law. The motion was supported by his own affidavit. The affidavit set forth the specific instances in which Dr. Hess diagnosed and treated plaintiff for gynecological problems following the delivery of her child in July of 1979. The affidavit stated that the plaintiff did not present any symptoms suggestive of a rectovaginal fistula until February 12, 1981. After maintaining that Dr. Hess was familiar with the standard of care applicable to general practitioners in the Rantoul area for the years 1979 through 1981, the affidavit asserted that because an examination for a rectovaginal fistula is quite painful, the standard of care in Rantoul did not require a general practitioner to perform such an examination absent

symptoms suggestive of that disorder. Finally, the affidavit concluded with an opinion, to a reasonable degree of medical certainty, that Dr. Hess' diagnosis and treatment of plaintiff's gynecological problems conformed to the applicable standard of care for general practitioners in the Rantoul area in the years 1979 through 1981.

Dr. Hess' motion for summary judgment dealt solely with his freedom from negligence, and it did not raise the issue that plaintiff's complaint was filed on February 14, 1983, two years and two days following the discovery of Dr. Hess' alleged negligence. However, on September 9, 1983, Dr. Hess filed a supplement to his previously filed motion for summary judgment raising the statute of limitations defense. This issue was resolved by the circuit court in favor of plaintiff upon explanation by plaintiff's counsel that the statute of limitations tolled on February 12, 1983, a Saturday. Pursuant to section 1.11 of the act on statutory construction, the last day for filing the complaint was extended to Monday, February 14, 1983. (See Ill. Rev. Stat. 1983, ch. 1, par. 1012.) Plaintiff's filing against Dr. Hess was within the limitation period.

In response to Dr. Hess' motion for summary judgment, plaintiff filed objections based on a counteraffidavit of William D. Matviuw, M.D. The affidavit stated that if called as a witness in the case, Dr. Matviuw could and would testify competently to matters in his affidavit. The affidavit further stated that he was familiar with "the minimal standards of acceptable medical care, diagnosis, and treatment for Carol L. Purtill's condition of ill-being as it existed" and that those minimal standards "were uniform throughout the United States wherever patients similar to Carol L. Purtill were examined, cared for and treated for the condition of ill-being similar to that suffered by Carol L. Purtill." After indicating that he had reviewed plaintiff's medical records pertaining to

the diagnosis, care, and treatment plaintiff received from Dr. Hess between 1979 and 1981, the affidavit offered Dr. Matviuw's expert opinion, to a reasonable degree of medical certainty, that such diagnosis, care, and treatment were not in accordance with these uniform minimum standards and that this deviation from the accepted standard of care resulted in injury to the plaintiff.

Finally, the affidavit set forth specific instances in which Dr. Matviuw contended that Dr. Hess was negligent in the diagnosis and treatment of Carol Purtill. Dr. Matviuw was critical of Dr. Hess because Dr. Hess failed to refer the plaintiff to a properly qualified gynecological specialist, failed to take proper diagnostic steps to learn the precise nature of plaintiff's condition of ill-being in view of her recurring complaints of vaginal irritation and discharge, and failed to diagnose the presence of or formation of two rectovaginal fistulae during the several vaginal examinations he performed upon plaintiff between July 3, 1979, and February 12, 1981. Dr. Matviuw was of the medical opinion that such fistulae tracts were discernable by careful vaginal examination. Plaintiff thereafter moved to strike Dr. Hess' motion for summary judgment on January 31, 1984, contending that Dr. Matviuw's counteraffidavit created a genuine issue of material fact regarding the diagnosis, care, and treatment rendered to plaintiff by Dr. Hess.

Dr. Hess filed a motion to strike Dr. Matviuw's counteraffidavit. Dr. Hess objected on the ground that Dr. Matviuw was not competent to testify as an expert witness because he did not have sufficient knowledge of the applicable standard of medical care. Dr. Hess argued that the counteraffidavit was insufficient under *Bartimus v. Paxton Community Hospital* (1983), 120 Ill. App. 3d 1060, because it failed to state specifically that Dr. Matviuw was familiar with the standard of practice in

Rantoul, Illinois, the community in which Dr. Hess practiced, or in a similar community. Since Dr. Matviuw's counteraffidavit did not suffice to oppose his affidavit in support of his motion for summary judgment, Dr. Hess urged the circuit court to strike Dr. Matviuw's counteraffidavit and to enter summary judgment in his favor.

The circuit court granted Dr. Hess' motion for summary judgment and struck the counteraffidavit of Dr. Matviuw. The circuit court allowed plaintiff 14 days to provide a legally sufficient affidavit in opposition to Dr. Hess' affidavit. Rather than filing a new affidavit, however, plaintiff filed a motion to reconsider. In that motion, plaintiff's counsel, after listing the communities in which Dr. Matviuw maintained medical offices, attempted to establish by way of population census data that those medical communities resembled Rantoul, thereby objectively qualifying Dr. Matviuw's familiarity with the standard of care in similar communities. The circuit court denied plaintiff's motion to reconsider and entered a written order denying plaintiff's objections to Dr. Hess' motion for summary judgment, plaintiff's motion to strike Dr. Hess' motion, and plaintiff's motion to reconsider. The circuit court in turn granted Dr. Hess' motion to strike Dr. Matviuw's counteraffidavit and Dr. Hess' motion for summary judgment. Relying on *Bartimus*, the circuit court concluded that plaintiff had failed to file a sufficient affidavit which averred facts showing affirmatively that Dr. Matviuw was familiar with the standards of medical care in Rantoul, Illinois, or similar communities. The circuit court also made a finding of no just reason to delay enforcement or appeal from its order pursuant to Supreme Court Rule 304(a) (94 Ill. 2d R. 304(a)). The appellate court affirmed the circuit court's entry of summary judgment in favor of Dr. Hess in an unpublished Rule 23 order.

First, we restate some of the general principles gov-

erning use of the summary judgment procedure in a medical malpractice action. "A defendant may, at any time, move with or without supporting affidavits for a summary judgment in his or her favor as to all or any part of the relief sought against him or her." (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005(b).) Further, "[t]he opposite party may prior to or at the time of the hearing on the motion file counteraffidavits." (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005(c).) Because the purpose of a summary judgment proceeding is to determine whether there are any genuine issues of triable fact (*Kobus v. Formfit Co.* (1966), 35 Ill. 2d 533, 538), a motion for summary judgment should be granted only when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005(c); see also *Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 586-87, *cert. denied* (1972), 408 U.S. 943, 33 L. Ed. 2d 766, 92 S. Ct. 2847.) While use of the summary judgment procedure is to be encouraged as an aid in the expeditious disposition of a lawsuit (*Allen v. Meyer* (1958), 14 Ill. 2d 284, 292), it is a drastic means of disposing of litigation and therefore should be allowed only when the right of the moving party is clear and free from doubt. *Beverly Bank v. Alsip Bank* (1982), 106 Ill. App. 3d 1012, 1016; *Schnabel v. County of Du Page* (1981), 101 Ill. App. 3d 553, 560.

In determining the existence of a genuine issue of material fact, courts must consider the pleadings, depositions, admissions, exhibits, and affidavits on file in the case and must construe them strictly against the movant and liberally in favor of the opponent. (*Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 398.) If a party moving for summary judgment supplies facts which, if not contradicted, would entitle such party to a judgment as a mat-

ter of law, the opposing party cannot rely on his pleadings alone to raise issues of material fact. (*Carruthers v. B.C. Christopher & Co.* (1974), 57 Ill. 2d 376, 380.) Thus, facts contained in an affidavit in support of a motion for summary judgment which are not contradicted by counteraffidavit are admitted and must be taken as true for purposes of the motion. *Heidelberger v. Jewel Cos.* (1974), 57 Ill. 2d 87, 92-93.

The sufficiency of affidavits offered in support of or in opposition to a motion for summary judgment is governed by Supreme Court Rule 191 (87 Ill. 2d R. 191). That rule provides in pertinent part:

> "Affidavits in support of and in opposition to a motion for summary judgment under section 2—1005 of the Code of Civil Procedure *** shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all papers upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto. If all of the facts to be shown are not within the personal knowledge of one person, two or more affidavits shall be used." (87 Ill. 2d R. 191(a).)

While this rule does not require that each affidavit include an express statement of the affiant to the effect "that the affiant, if sworn as a witness, can testify competently thereto" (*Saghin v. Romash* (1970), 122 Ill. App. 2d 473, 477), the rule is satisfied if "it appears from the whole of the documents that the affiant would be competent to testify if called upon." *Nardi, Pain & Podolsky, Inc. v. Vignola Furniture Co.* (1967), 80 Ill. App. 2d 220, 227.

In a negligence medical malpractice case, the burden is on the plaintiff to prove the following elements of a cause of action: the proper standard of care against

which the defendant physician's conduct is measured; an unskilled or negligent failure to comply with the applicable standard; and a resulting injury proximately caused by the physician's want of skill or care. (*Walski v. Tiesenga* (1978), 72 Ill. 2d 249, 256; *Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 423.) Unless the physician's negligence is so grossly apparent or the treatment so common as to be within the everyday knowledge of a layperson, expert medical testimony is required to establish the standard of care and the defendant physician's deviation from that standard. (*Walski v. Tiesenga* (1978), 72 Ill. 2d 249, 256; *Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 423; Illinois Pattern Jury Instructions, Civil, No. 105.01 (2d ed. 1971) (hereinafter cited as IPI Civil 2d); see also 2 Dooley, Modern Tort Law sec. 34.31 (1983).) In determining the standard of care against which the defendant physician's alleged negligence is judged, Illinois courts have followed the "similar locality" rule, which requires a physician to possess and to apply that degree of knowledge, skill, and care which a reasonably well-qualified physician in the same or similar community would bring to a similar case under similar circumstances. See *Bartimus v. Paxton Community Hospital* (1983), 120 Ill. App. 3d 1060, 1067; *Chamness v. Odum* (1979), 80 Ill. App. 3d 98, 108; *Stogsdill v. Manor Convalescent Home, Inc.* (1976), 35 Ill. App. 3d 634, 653-54; see also IPI Civil 2d No. 105.01; Restatement (Second) of Torts sec. 299A, comment *e* (1965); see generally Annot., 99 A.L.R.3d 1133 (1980).

In light of the requirements set forth in Supreme Court Rule 191 for affidavits in support of or in opposition to motions for summary judgment, an expert medical witness seeking to express an opinion in an affidavit as to the proper standards of diagnosis, care, and treatment that should have been followed in a particular case must lay a foundation which affirmatively establishes his

qualifications and competency to testify. It must be established that the expert is a licensed member of the school of medicine about which he proposes to express an opinion (*Dolan v. Galluzzo* (1979), 77 Ill. 2d 279, 285), and the expert witness must show that he is familiar with the methods, procedures, and treatments ordinarily observed by other physicians, in either the defendant physician's community or a similar community. (See *Bartimus v. Paxton Community Hospital* (1983), 120 Ill. App. 3d 1060, 1065-67; *Chamness v. Odum* (1979), 80 Ill. App. 3d 98, 108-09; Waltz, *The Rise and Gradual Fall of the Locality Rule in Medical Malpractice Litigation*, 18 DePaul L. Rev. 408, 409-10 (1969); see generally Annot., 37 A.L.R.3d 420 (1971).) Once the former requirement has been satisfied, "it lies within the sound discretion of the trial court to determine if the witness is qualified [and competent] to [state his opinion] as an expert regarding the standard of care." *Dolan v. Galluzzo* (1979), 77 Ill. 2d 279, 285.

With the foregoing principles in mind, we now address the issue whether Dr. Matviuw's counteraffidavit affirmatively demonstrated the plaintiff's ability to offer competent expert testimony concerning the required standard of medical care, and created a genuine issue of material fact. In granting summary judgment in favor of Dr. Hess, the lower courts relied on *Bartimus v. Paxton Community Hospital* (1983), 120 Ill. App. 3d 1060. That case involved an action to recover damages for injuries allegedly sustained by the plaintiff as the result of negligent medical treatment by the defendants. At trial, plaintiff's medical expert testified that the care plaintiff received was not in accordance with "minimum" standards of care and that this deviation from the accepted standard of care resulted in injury to the plaintiff. Plaintiff's expert admitted a lack of knowledge of the standard of care applicable to physicians in the Paxton area or

in similar communities, as well as a lack of familiarity with Paxton Community Hospital and its facilities. He also admitted that he had never worked in the emergency room of a hospital where the physicians were on call as they were at Paxton Community Hospital. The witness testified, however, that according to "minimum standards across the country," the defendant physician's conduct deviated from those "minimum" standards. In holding that the admission of the expert's testimony was error, the appellate court set forth the requirement that prior to the introduction of an expert witness' testimony, a foundation must be laid which demonstrates that the witness is familiar with the standard of care applicable to a defendant physician. This foundation mandates an affirmative showing that the witness is familiar with medical practice in a community similar to that where the defendant physician practices. The court held in *Bartimus* that the plaintiff had failed to satisfy the requisite foundation requirement. Accordingly, the admission of the expert's testimony was held to be error. 120 Ill. App. 3d 1060, 1067.

It must be remembered that the admissibility of the expert's testimony in *Bartimus* was determined at the trial of the case after his competency to testify had been thoroughly explored. In our case we are considering Dr. Matviuw's qualifications only in terms of whether his affidavit is sufficient to create an issue of fact in opposition to Dr. Hess' motion for summary judgment.

The principal contention of Dr. Hess is that Dr. Matviuw is not competent to testify as an expert medical witness because Dr. Matviuw is not familiar with the standard of medical care either in Rantoul or a similar community. Dr. Hess points out that Dr. Matviuw's counteraffidavit indicates only that he is familiar with minimal standards of acceptable medical diagnosis, care, and treatment and that those minimal standards are uniform

throughout the United States. Because this type of foundation was rejected in *Bartimus,* Dr. Hess argues that the lower courts were correct in concluding that Dr. Matviuw was not competent to testify as an expert medical witness on the standard of care required of Dr. Hess in his diagnosis and treatment of plaintiff's gynecological condition. Dr. Hess also argues that plaintiff's attempt to objectively establish, through population census data, Dr. Matviuw's familiarity with the standard of care applicable to physicians in similar communities conflicts with those decisions which have defined "similar" locality in terms of similar medical facilities, practices, and advantages. Dr. Hess emphasizes plaintiff's failure to cite any case which authorizes a court to infer a similarity of community for purposes of the locality rule on the basis of population alone.

It is plaintiff's position that Dr. Matviuw's counteraffidavit sufficiently complied with the foundation requirements set forth in Supreme Court Rule 191 and the *Bartimus* decision. Plaintiff contends that the purpose of the locality rule is to determine whether an expert witness has sufficient knowledge of the standards by which the defendant physician should be judged, rather than a subjective familiarity with the transaction community or a similar community. Therefore, since the standards involved in the present case are minimum standards applicable wherever medicine is practiced, plaintiff asserts that the standards are the same regardless of the community. Plaintiff also urges us to reconsider, in light of modern medical practice, the appropriateness of the locality rule in determining the competency of an expert medical witness to testify to the standard of care required of a physician in a malpractice action. Plaintiff suggests that the locality rule should be modified to permit proof of the standard of care to be dealt with as any other issue of fact, through expert testimony. If a na-

tional or statewide standard in fact exists, plaintiff maintains that it may be established by expert testimony.

In plaintiff's original brief, the abolition of the "similar locality" rule as recognized in Illinois is not urged. Instead, it is argued that the rule should be broadened to incorporate nationwide standards where applicable. However, in the plaintiff's reply brief and in oral argument, the abolition of the "similar locality" rule is urged and is referred to in the reply brief as being "as outmoded as the horse and buggy in the modern medical world." Plaintiff's reply brief also asserts that the medical profession itself has adopted and applies national standards of education and skill for the purposes of awarding medical degrees and of certifying specialities. It is argued, therefore, that the rural practitioner should not be held to a lesser standard of care because he may practice in a small community. Plaintiff wrongfully emphasizes the rural-urban explanation for the "similar locality" rule as a justification for inferior medical care in less populous areas. Whatever may have been the original reason for the rule, we recognize that there are today relatively uniform standards for the education and the licensing of physicians. Also, there is no reason why physicians in a rural area should not possess a degree of competency similar to that possessed by physicians in urban areas. However, these facts do not justify the abolition of the "similar locality" rule. The availability of medical facilities for examination and treatment, the presence or absence of specialists and other medical personnel for consultation and assistance, and numerous other variables that may be present or absent in different localities dictate the method in which a physician's education and skills may be applied. In some localities a patient need only be moved from one room to another in a hospital (or remain in the same room) to receive a variety of specialized examinations and treatments. In another locality

a patient must be transported by helicopter to one medical center in a different city for one type of special treatment, and to a different medical center in another city for another. The physician's professional conduct must be judged in light of the conditions and facilities with which he must work. If a plaintiff's expert is familiar with the standards of care applicable to conditions and facilities available to the defendant doctor, then he is qualified to testify. If, as in the cases discussed hereafter, there are certain uniform standards that would be applicable to a given situation regardless of the locality, then the lack of familiarity with the practice in a particular locality will not disqualify the expert. However, if conditions and facilities that are available are relevant, then before an expert can express an opinion as to a physician's conduct, he must be acquainted with accepted standards of care under similar circumstances.

Notwithstanding our refusal to reconsider the "similar locality" rule, we agree with plaintiff that Dr. Matviuw's counteraffidavit sufficiently complied with the foundation requirements set forth in Supreme Court Rule 191 and the *Bartimus* decision.

The question of the competency of an expert witness to testify to minimum standards of medical practice, in the absence of familiarity with the standards in the transaction community or a similar community, has been addressed by reviewing courts in other jurisdictions. See *Pollard v. Goldsmith* (1977), 117 Ariz. 363, 572 P.2d 1201; *Faulkner v. Pezeshki* (1975), 44 Ohio App. 2d 28 186, 337 N.E.2d 158; *Hundley v. Martinez* (1967), 151 W. Va. 977, 158 S.E.2d 159.

In *Hundley*, the plaintiff brought a malpractice action against a Charleston, West Virginia, ophthalmologist for permanent injuries allegedly arising from a cataract operation. The trial court excluded the testimony of plaintiff's expert witness on the ground that the expert never

practiced in Charleston and thus was not familiar with the standard of medical care in that community. The Supreme Court of Appeals of West Virginia, after rejecting the "strict" application of the locality rule, concluded that plaintiff's expert was sufficiently familiar with the standards of medical care used in performing cataract operations in Charleston, West Virginia, to qualify him as a competent medical witness. In his deposition, plaintiff's expert testified that he was familiar with the methods and procedures for operating on a cataract and that these standards were uniform throughout the country. The trial judge thus reasoned that because he was familiar with this "standard procedure throughout the country," localities similar to Charleston were included within his scope of knowledge.

The Ohio Court of Appeals in *Faulkner* relied on the *Hundley* decision in upholding the admissibility of an expert witness' testimony. The *Faulkner* court reasoned:

> "Irrespective of the continuing validity of the same or similar locality standard in Ohio, we are of the view that the standard should not exclude testimony of an expert witness where the standards to which he proposes to testify are minimum standards applicable wherever medicine is practiced. The question, to us, is not whether the proffered witness practiced in Portsmouth or a similar locality, but if he knows what the applicable standards are. [Citation.] To the extent that minimum standards are involved, the standard of practice in Portsmouth and elsewhere are within his scope of knowledge. *Hundley v. Martinez* (1967), 151 W. Va. 977, 158 S.E. 2d 159; [citation]." *Faulkner v. Pezeshki* (1975), 44 Ohio App. 2d 186, 205, 337 N.E. 2d 158, 163.

The Arizona Court of Appeals in *Pollard* also allowed an expert to testify to "minimum" standards of care without demonstrating a familiarity with the standard of practice in the transaction community. In that case, the decedent suffered a compound comminuted ankle frac-

ture in an automobile accident. Following emergency room treatment, the decedent died as a result of tetanus infection. The trial court entered summary judgment in favor of the defendant physician on the ground that the plaintiffs failed to demonstrate they could produce an expert witness who would testify that the defendant's treatment of the decedent fell below the applicable standard of care. In reversing the trial court, the appellate court reasoned that although the proposed expert's affidavit failed to state specifically that he was familiar with the standard of practice in Phoenix, Arizona, it did state that he was familiar with the standard of care of physicians in the treatment of traumatic injuries. The court thus inferred from the expert's affidavit that there was a minimum standard of care for the treatment of traumatic wounds. Citing *Faulkner* for the proposition that an expert witness' testimony should not be excluded where the standards to which he proposes to testify are minimum standards applicable everywhere, the court concluded that even under the "strict" locality test, the expert's allegation that he was familiar with the applicable standard of care was sufficient to withstand a motion for summary judgment.

We are persuaded by the reasoning of these courts. We are also persuaded by those reviewing courts which have allowed expert medical testimony concerning uniform "minimum" standards for certain types of procedures or treatment. See, *e.g.*, *Martin v. Bralliar* (1975), 36 Colo. App. 254, 540 P.2d 1118 (treatment of "trigger finger"); *Murphy v. Little* (1965), 112 Ga. App. 517, 145 S.E.2d 760 (treatment of fractures); *Chandler v. Neosho Memorial Hospital* (1977), 223 Kan. 1, 574 P.2d 136 (administration of supplemental oxygen to premature infants); *Wentling v. Jenny* (1980), 206 Neb. 335, 293 N.W.2d 76 (treatment and diagnosis of breast cancer); *Los Alamos Medical Center, Inc. v. Coe* (1954), 58 N.M.

686, 275 P.2d 175 (administration of morphine); *Rucker v. High Point Memorial Hospital, Inc.* (1974), 285 N.C. 519, 206 S.E.2d 196 (treatment of gunshot wounds); *King v. Ditto* (1933), 142 Or. 207, 19 P.2d 1100 (X-ray treatment); *Webb v. Jorns* (Tex. 1972), 488 S.W.2d 407 (anesthetic procedures).

Accordingly, when Dr. Matviuw stated in his affidavit that he was familiar with the *minimum* standards of medical practice in relation to the diagnosis and treatment of rectovaginal fistulae and that those *minimum standards* were *uniform* throughout the country, localities similar to Rantoul were included within his scope of knowledge.

Construing Dr. Matviuw's counteraffidavit strictly against Dr. Hess and liberally in favor of the plaintiff, in light of the reasoning set forth in the *Faulkner, Pollard,* and *Hundley* decisions, we hold that the affidavit is sufficient to withstand Dr. Hess' motion for summary judgment. The appellate court decisions of this State have held that summary judgment is proper in a medical malpractice case only where the plaintiff has failed to demonstrate an ability to offer, through competent expert testimony, evidence at trial on the applicable standard of medical care. See, *e.g., Bennett v. Raag* (1982), 103 Ill. App. 3d 321; *Prather v. Decatur Memorial Hospital* (1981), 95 Ill. App. 3d 470; *Buck v. Alton Memorial Hospital* (1980), 86 Ill. App. 3d 347; *Lawrence v. Rubio* (1980), 85 Ill. App. 3d 472; *Chiero v. Chicago Osteopathic Hospital* (1979), 74 Ill. App. 3d 166; *Conrad v. Christ Community Hospital* (1979), 77 Ill. App. 3d 337; *Stevenson v. Nauton* (1979), 71 Ill. App. 3d 831; *Hill v. Lutheran Hospital* (1978), 58 Ill. App. 3d 1003; *Kwak v. St. Anthony De Padua Hospital* (1977), 54 Ill. App. 3d 719.

As previously noted, Dr. Matviuw's qualification as an expert was judged by the lower courts and is considered

in this court only on the basis of his affidavit, which we hold was sufficient to create a question of fact as to Dr. Hess' compliance with applicable standards of care. The lower courts *erred* in allowing Dr. Hess' motion for summary judgment. It may be that further discovery proceedings will disclose that Dr. Matviuw is, in fact, not qualified as an expert. Furthermore, testimony at trial may disclose that he is not qualified to testify, which was the case in *Bartimus v. Paxton Community Hospital* (1983), 120 Ill. App. 3d 1060, which case was relied upon by both the trial and appellate courts. However, here we are dealing only with the sufficiency of Dr. Matviuw's affidavit in opposition to the defendant's motion for summary judgment.

For the reasons above stated, the judgments of the appellate and circuit courts are reversed and the cause is remanded to the circuit court of Champaign County for further proceedings.

*Reversed and remanded.*

JUSTICE SIMON took no part in the consideration or decision of this case.