ROBERT FOLEY, Plaintiff-Appellant, v. THE CITY OF LA SALLE, Defendant-Appellee.

Third District   No. 3—92—0430

Opinion filed February 18, 1993.

Aplington, Kaufman, McClintock, Steele & Barry, Ltd., of La Salle (Raymond R. Nolasco, of counsel), for appellant.

John A. Hayner, of Ottawa, for appellee.

JUSTICE SLATER delivered the opinion of the court:

Plaintiff Robert Foley was injured when he fell after stepping into a rut while chasing a fly ball during a softball game. Plaintiff filed a complaint against defendant City of La Salle (the city) alleging that its failure to properly maintain the softball field and its failure to warn the plaintiff of the existence of the rut constituted willful and wanton conduct. The trial court granted the city's motion for summary judgment and plaintiff appeals. We affirm.

Our review of the pleadings, depositions and affidavits reveals the following facts. Hegler Park is owned and operated by the city. Plaintiff, who is an experienced baseball and softball player, was playing left field as a member of a team participating in the fall softball league at Hegler Park. On September 28, 1988, plaintiff injured his knee when his foot caught in a rut while he was attempting to catch a fly ball in left field. Plaintiff described the rut as 6 to 12 inches wide, but he did not know how deep or long it was. Prior to September 28, plaintiff had seen tire tracks in the outfield which could have been caused by vehicles associated with a city-sponsored celebration known as La Salle Fest. The affidavits of two members of plaintiff's softball team indicated that they had observed ruts in the outfield on September 28 and the ruts corresponded with similar ruts they had observed at La Salle Fest. In addition, post holes which had been dug for the erection of a fence during La Salle Fest were unfilled and unrepaired on September 28, according to plaintiff and one of his teammates. These holes were located just beyond the infield playing area.

La Salle Fest took place on September 9 and 10 of 1988. Food stands, booths, a beer garden and a stage were set up on and around the softball field. John Stegen, the park maintenance crew chief, testified that some food trailer stands were located in deep left field near a temporary fence. Two beer trucks had also been located at the edge of the outfield. Stegen was not concerned about possible damage to the outfield area because the summer of 1988

had been very hot and dry and the ground was hard. Plaintiff similarly testified that it had been a very dry summer and the ground in the outfield was hard. Stegen stated that after La Salle Fest ended he raked the entire softball field, including left field, and he did not see any holes, ruts or tire marks. According to Stegen, he or members of his crew inspected the softball field regularly. If crew members found a hole or a rut, they were instructed to fill the hole and to report it to Stegen.

Ruth Spayer, the park and recreation director for the city, testified that park employees are directed to walk through the park, including the outfield, every day to pick up debris and check for anything out of the ordinary. Park employees were not specifically instructed, however, concerning inspection of the outfields. The summer maintenance crew at Hegler Park usually consisted of three students working part time, supervised by Stegen, who also worked part time. The students returned to school in the fall, and in September of 1988 maintenance work was performed by Stegen and one part-time employee.

According to Spayer, during La Salle Fest a stage was set up on the dirt infield of the softball diamond. A flatbed truck was located between second and third base. A temporary snow fence was erected around the outer limits of the infield. to protect the stage and sound equipment from the extreme dust that year. Food booths consisting of self-contained trailers were set up along the outer limits of the outfield, near a temporary snow fence and a series of electric light poles. The beer garden was located approximately in center field, surrounded by a double temporary snow fence. The beer trucks entered the park from the northwest corner, crossing from right field to center field. Spayer did not know what route the trucks took when they left the park. As indicated earlier, the trial court granted the city's motion for summary judgment.

A motion for summary judgment should be granted when the pleadings, depositions, admissions and affidavits on file show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c); *Addison v. Whittenberg* (1988), 124 Ill. 2d 287, 529 N.E.2d 552.) In determining whether a triable issue exists, the pleadings, depositions, admissions and affidavits must be construed against the movant and in favor of the opponent. (*Addison*, 124 Ill. 2d 287, 529 N.E.2d 552.) The existence of factual questions will not preclude summary judgment unless those facts are material to the litigation. (*Quinton v. Kuffer* (1991), 221 Ill. App. 3d 466, 582

N.E.2d 296.) A trial court's ruling on a motion for summary judgment is subject to *de novo* review by this court. *Farmers State Bank v. National Bank* (1992), 230 Ill. App. 3d 881, 596 N.E.2d 173.

As a local public entity, the city is entitled to the protection provided by the Local Governmental and Governmental Employees Tort Immunity Act (the Act) (Ill. Rev. Stat. 1987, ch. 85, par. 1—101 *et seq.*). Section 3—106 of the Act provides that the city is not liable for an injury where that liability is based on the existence of a condition of property used for recreational purposes unless the city is guilty of willful and wanton conduct. (Ill. Rev. Stat. 1987, ch. 85, par. 3—106.) Plaintiff's complaint alleged that the city was guilty of willful and wanton conduct in failing to warn him of the existence of the rut and in failing to repair and maintain the left field area when it knew or should have known of the existence of the rut.

The Act defines willful and wanton conduct as a deliberate intention to cause harm or a course of action which shows an utter indifference to or conscious disregard for the safety of others. (Ill. Rev. Stat. 1987, ch. 85, par. 1—210.) In *Burke v. 12 Rothschild's Liquor Mart, Inc.* (1992), 148 Ill. 2d 429, 593 N.E.2d 522, the supreme court examined the meaning of the term "willful and wanton" under Illinois law. The court stated that willful and wanton conduct approaches the degree of blame associated with intentional harm, because the defendant deliberately inflicts a highly unreasonable risk of harm upon others in conscious disregard of that risk. (*Burke*, 148 Ill. 2d at 448, 593 N.E.2d at 530.) The court noted that the Restatement of Torts avoids using the term "willful and wanton," instead characterizing such conduct as "reckless." Quoting the Restatement, the court explained the differences between reckless conduct and mere negligence:

> " '[Reckless misconduct] differs from that form of negligence which consists in mere inadvertence, incompetence, unskillfulness, or a failure to take precautions to enable the actor adequately to cope with a possible or probable future emergency, in that reckless misconduct requires a conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man. It differs not only from the above-mentioned form of negligence, but also from that negligence which consists in intentionally doing an act with knowledge that it contains a risk of harm to

others, in that the actor to be reckless must recognize that his conduct involves a risk substantially greater in amount than that which is necessary to make his conduct negligent. The difference between reckless misconduct and conduct involving only such a quantum of risk as is necessary to make it negligent is a difference in the degree of the risk, but this difference of degree is so marked as to amount substantially to a difference in kind.' Restatement (Second) of Torts §500, Comment *g*, at 590 (1965)." (*Burke*, 148 Ill. 2d at 449-50, 593 N.E.2d at 531.)

The supreme court adopted the Restatement's view that there is a qualitative difference between negligence and willful and wanton conduct. *Burke*, 148 Ill. 2d at 450, 593 N.E.2d at 531.

■ After construing the pleadings, depositions and affidavits against the city and in favor of the plaintiff, we do not believe that the city's acts or omissions can properly be characterized as willful and wanton conduct. The evidence shows that the conduct of the city and its employees in either failing to discover the rut or in failing to repair it or warn of it was, at most, due to inadvertence, incompetence or unskillfulness. The deposition testimony of Stegen and Spayer regarding the city's policy of inspection of the park was uncontroverted. There is no evidence that this policy was consciously disregarded in the face of a known danger. While the circumstances suggest that the city may have been negligent, its conduct did not involve "a risk substantially greater in amount than that which is necessary to make [its] conduct negligent." Restatement (Second) of Torts §500, Comment *g*, at 590 (1965); see *Brown v. Chicago Park District* (1991), 220 Ill. App. 3d 940, 581 N.E.2d 355 (failure to remove mirror from public showers was not willful and wanton conduct); *Majewski v. Chicago Park District* (1988), 177 Ill. App. 3d 337, 532 N.E.2d 409 (failure to inspect football field or to remove or warn of broken glass was not willful and wanton conduct); *Lester v. Chicago Park District* (1987), 159 Ill. App. 3d 1054, 513 N.E.2d 72 (improper repair of holes and ruts in softball field was not willful and wanton conduct).

■ Plaintiff, relying on *Harding v. City of Highland Park* (1992), 228 Ill. App. 3d 561, 591 N.E.2d 952, also contends that because the complaint alleges independent negligence by the city in creating the defect and allowing it to remain, section 3–106 does not apply and the city is liable even if it is merely negligent. This issue was not presented to or considered by the trial court and is deemed to be waived. (*Harbor Insurance Co. v. Arthur Andersen &*

*Co.* (1986), 149 Ill. App. 3d 235, 500 N.E.2d 707.) In any event, *Harding* does not support plaintiff's position. *Harding* held that lack of actual or constructive notice of a dangerous condition does not preclude a municipality's liability for negligence where it caused the condition. The *Harding* court was construing section 3—102 of the Act, which concerns a municipality's liability for negligence. *Harding* has no bearing upon a case alleging liability for willful and wanton conduct under section 3—106.

For the reasons stated above, the judgment of the circuit court is affirmed.

Affirmed.

BRESLIN and LYTTON, JJ., concur.