654 N.E.2d 463 (1995)
274 Ill.App.3d 970
211 Ill.Dec. 1
Ricardo HERNANDEZ, Plaintiff-Appellant,
v.
CHICAGO PARK DISTRICT, a Municipal Corporation, Defendant-Appellee.
No. 1-92-0650.
Appellate Court of Illinois, First District, Third Division.
June 28, 1995.
Rehearing Denied September 5, 1995.
As Modified September 6, 1995.
Piccione, Kelly & Associates, Ltd., Wheaton (John J. Piccione, Mark W. Tader, of counsel), for appellant.
Pollina and Phelan, Schaumburg (Denis R. Pollina, of counsel), for appellant.
Nelson A. Brown, Jr., Sr. Asst. Gen. Atty., Chicago Park Dist., Chicago, for appellee Chicago Park Dist.

MODIFIED ON DENIAL OF REHEARING
Justice CERDA delivered the opinion of the court:
On June 29, 1985, the plaintiff was injured during a softball game at Harrison Park, Chicago, Illinois. The plaintiff, filed suit against the defendant, Chicago Park District.
After the jury rendered a verdict in favor of plaintiff, Ricardo Hernandez, in his personal injury case, the trial court entered judgment in favor of defendant, Chicago Park District, after granting its motion for judgment notwithstanding the verdict. On appeal, plaintiff asserts that the trial court erred in overruling the jury's verdict. For the following reasons, we affirm.
Lawrence Reagan testified that he was employed by the Chicago Park District as a *464 construction inspector. In October 1984, Landscape Contractors of Illinois began raising the grade and relocating the southwest ball field in Harrison Park. In preparation for the construction work, park district surveyors staked out home base, first base, and third base for the contractor. The stakes were driven in flush with the existing ground.
When the work was completed on May 3, 1985, Reagan inspected the diamond. Reagan did not remember seeing a stake at home base during the inspection. Furthermore, the punch list, which was a list of those things not in conformity with the contract, did not indicate that a stake was present at home base. If he had seen a stake sticking out of the ground, Reagan stated that he would have had it removed.
Juan Martinez, a Chicago Park District maintenance foreman, testified that he prepares and marks the field for ballgames. Because the truck will not fit in the area around home base, that area is not dragged, but cleaned by hand. After dragging the field to make sure that there is no debris, Martinez and his crew marks the baseline with chalk. One of the crew members, Leo Manijak, who is a special laborer for the park district in Harrison Park, explained how he marks the baseline and then cleans and inspects the infield.
Both Martinez and Maiujak testified that they were never told that there was a stake at home base and never saw one. If either of them had seen a stake, he would have taken it out so that no one would be injured.
John Miller, the production manager for Landscape Contractors of Illinois, testified that six to 12 of his crew members renovated four or five baseball diamonds and raised the grade at Harrison Park from the fall of 1984 until May 3, 1985. Miller coordinated his work with Reagan, but was not on the site at all times during the construction.
According to Miller, Reagan's crew surveyed the field and placed the one inch by one inch stakes at control points, including home base. Usually, the groundspeople pounded the stake into the ground and then painted fluorescent orange paint on the top of them so that they would be easier to see in the grass. The stake at home base was three-quarters of an inch above the ground when the construction began. If a clay/sand mixture was added to raise the grade level, that mixture would have covered the stake. At the final inspection, Miller did not remember seeing any stakes.
Victor Gomez, the park district's recreation supervisor in 1984 and 1985, testified that he supervised the ballgames, leagues, and other recreational activities at Harrison Park. Although he saw stakes painted orange on the end during the construction from 1984 until May 1985, he had no knowledge of a stake at home plate when the softball leagues started in May 1985. Before June 29, 1985, no park district surveyor, supervisor, or employee told Gomez that a stake had been put into the ground.
Michael Medina, who played on the same softball team as plaintiff during the 1985 softball season, testified that he had noticed a rectangular wooden stake protruding two inches above the ground at home plate when the season began in the first or second week of May. Each time he played a game on that same field, he observed that the stake was two inches above the ground. Prior to plaintiff's accident, however, he did not report its existence to the park district because he did not think it was dangerous.
On the afternoon of June 29, 1985, Medina saw plaintiff get injured. Plaintiff was on second base when someone hit a base hit. Plaintiff ran along the baseline and slid into home base to avoid being tagged and did not come into contact with the catcher. Plaintiff appeared to use a proper hook slide. Medina explained that the league has a must slide rule in order to avoid contact.
Plaintiff started to writhe and cry out in pain. About 10 minutes later, an ambulance arrived and took plaintiff to the hospital. Later, Medina looked around the home plate area and saw the stake protruding an inch or two above the ground.
Joseph Lopez, the league umpire on June 29, 1985, testified that the league had a must slide rule, which meant that a player coming toward a base had to slide if the play was close so that no one would get hurt through *465 contact. On June 29, 1985, at 3 p.m., Lopez was the home plate umpire for the softball game in which plaintiff was injured. During the game, plaintiff was running from third base when he properly slid into home plate. Lopez looked around the area and saw a wooden stake about two and one-half to three feet behind home plate. It was protruding above the ground about one-half to one inch. Someone pounded the stake back into the ground before play resumed. Lopez stated that he did not notice the stake before that time.
Plaintiff's brother, Arthur Hernandez, testified that he was a coach for plaintiff's team on June 29, 1985. When plaintiff was injured, Arthur was standing on a bench near third base. From that position, Arthur saw plaintiff run toward home plate and slide. After the paramedics took plaintiff to the ambulance in a stretcher, Arthur examined the area around home plate. He saw a piece of wood sticking an inch out of the ground near home plate. He did not know about the stake before plaintiff's injury. Before the game resumed, someone pounded the stake back into the ground. After the game, Arthur measured the distance from the stake to home plate and then used a hammer and screwdriver to remove the stake.
Next, plaintiff testified that on June 29, 1985, he was running toward home plate when he started to slide about two feet before he reached home plate. He did not see a stake near home plate after his injury nor was he aware of it prior to his injury. After being taken to University of Illinois Hospital, plaintiff remained there until July 17, 1985. He suffered a laceration on his left leg that was repaired with a skin graft from his left thigh. Plaintiff walked on crutches for one month and continued with medical care until September 3, 1985. He has not played softball since his injury.
Finally, Phillip Coronado testified that he is a youth coordinator for Catholic Charities in the area around Harrison Park. As part of his duties, Coronado runs the softball leagues in Harrison Park. He was present in the park everyday during the summer season beginning in April. He estimated that he was on the southwest diamond, where plaintiff's injury occurred, 100 times between May 1, 1985, and June 29, 1985. Before every game, Coronado made sure the diamond, including home plate, was in playable condition. He never saw a stake sticking above the ground around home plate.
Between May 1, 1985, and June 29, 1985, Coronado umpired approximately eight or nine games on the southwest field. On the morning of June 29, 1985, Coronado had umpired a 9 a.m. Little League game on that field. He did not see a stake sticking out of the ground around home plate. That afternoon, Coronado watched the game in which plaintiff was injured, but did not see the accident. After plaintiff's injury, Coronado looked around home plate and saw a stake sticking out of the ground about one foot from home plate.
After deliberations, the jury returned a verdict in favor of plaintiff for $192,580. Following the verdict, the trial court found that the record did not support a finding of willful and wanton conduct by defendant and entered a judgment notwithstanding the verdict in favor of defendant.
The issue is whether defendant had constructive notice of the protruding stake so that its conduct in not removing it was willful and wanton. Plaintiff argues that there was sufficient evidence to find that the park district's conduct was willful and wanton in placing and maintaining the stake that caused his injury. He contends that the park district knew that the stake was present because it had placed it on the field during construction and never removed it. Plaintiff stresses that Medina testified that he saw the stake protruding from the ground six weeks before plaintiff was injured, which was enough time to give the park district constructive notice that the stake was protruding above the ground.
We reject defendant's argument. The evidence presented at trial was legally insufficient to support a judgment of willful and wanton conduct because the park district did not have notice, either actual or constructive, that the stake was above ground level at the time of plaintiff's injury, earlier that day, or within one month of that time.
*466 In ruling on a judgment notwithstanding the verdict, the court does not weigh the evidence nor consider the credibility of the witnesses, but considers the evidence and its reasonable inferences. (Maple v. Gustafson (1992), 151 Ill.2d 445, 453, 177 Ill.Dec. 438, 603 N.E.2d 508.) If the evidence, viewed in the light most favorable to the nonmovant, overwhelningly favors the movant so that no contrary verdict could stand, a judgment notwithstanding the verdict should be granted. (Maple, 151 Ill.2d at 453, 177 Ill.Dec. 438, 603 N.E.2d 508; Gillespie v. Chrysler Motors Corp. (1990), 135 Ill.2d 363, 383, 142 Ill.Dec. 777, 553 N.E.2d 291; Pedrick v. Peoria & Eastern RR. Co. (1967), 37 Ill.2d 494, 510, 229 N.E.2d 504.) A judgment notwithstanding the verdict cannot be granted merely because the verdict is against the manifest weight of the evidence. Maple, 151 Ill.2d at 453, 177 Ill.Dec. 438, 603 N.E.2d 508.
Willful and wanton, or reckless, conduct exists where an act is intended or done with a conscious disregard or indifference for the consequences when the known safety of others is involved. (Burke v. 12 Rothschild's Liquor Mart (1992), 148 Ill.2d 429, 451, 170 Ill.Dec. 633, 593 N.E.2d 522.) Reckless misconduct requires a conscious choice of a course of action, either with knowledge of the serious danger to others or with knowledge of facts that would disclose this danger to any reasonable person. (Burke, 148 Ill.2d at 449, 170 Ill.Dec. 633, 593 N.E.2d 522, quoting Restatement (Second) of Torts § 500, Comment g, at 590 (1965).) Willful and wanton misconduct goes far beyond mere inadvertence. Foley v. City of La Salle (1993) 241 Ill.App.3d 54, 181 Ill.Dec. 713, 608 N.E.2d 964.
After considering the evidence and its inferences in the light most favorable to plaintiff, we conclude that the trial court properly entered the judgment notwithstanding the verdict. There was no evidence that the park district had actual or constructive notice that the stake protruded above the ground. The stake was not dangerous unless it protruded above the ground.
Furthermore, the park district did not have constructive notice of the protruding stake. Although Medina saw a stake protruding above the ground, he testified that he did not believe it was dangerous and therefore, did not tell anyone about the stake. There was overwhelming evidence that no one else saw the stake above the ground in the weeks just prior to plaintiff's injury.
Lawrence Reagan, Juan Martinez, Leo Manijak, John Miller, Victor Gomez, Joseph Lopez, and Phillip Coronado never saw a stake protruding above the ground before the injury. The plaintiff's brother did not know about the stake before the injury, and he was a coach on plaintiff's team. There was simply no basis for the jury's verdict that the Park District was guilty of wilful and wanton conduct on June 29, 1985. We can only speculate why the stake was protruding above the ground at the time of the injury. However, a jury's verdict may not be based on speculation, it must be based on the evidence.
The evidence shows that the park district did not have constructive notice that the stake was protruding above the ground at the time of plaintiff's injury. While the circumstances suggest that the park district may have been negligent, its conduct was not willful or wanton. Accordingly, we affirm the circuit court's judgment.
AFFIRMED.
GREIMAN, P.J., concurs.
TULLY, J., dissents.
Justice TULLY, dissenting:
I respectfully dissent.
The standard to be employed by this court in assessing the propriety of a denial of a motion for judgment notwithstanding the verdict is well-established. A judgment notwithstanding the verdict ought to be entered only in those cases in which all the evidence, when viewed in its aspect most favorable to the nonmovant, so overwhelmingly favors the movant that no contrary verdict based on the evidence could ever stand. (Pedrick v. Peoria & Eastern R.R. Co. (1967), 37 Ill.2d 494, 510, 229 N.E.2d 504.)
*467 Section 3-106 of the Local Governmental and Governmental Employees Tort Immunity Act (the Act) provides that a local public entity, such as the Chicago Park District, is not liable for an injury on a public park where liability is premised on the existence of a condition of the property "unless such local entity * * * is guilty of willful and wanton conduct proximately causing such injury." (Ill.Rev.Stat.1985, ch. 85, par. 3-106 (now 745 ILCS 10/3-106 (West 1994)).) Section 1-210 of the Act defines willful and wanton conduct as "a course of action which shows an actual or deliberate course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." Ill.Rev.Stat.1985, ch. 85, par. 1-210 (now 745 ILCS 10/1-210 (West 1994)).
In the instant case I believe the evidence presented at trial, when viewed in its aspect most favorable to plaintiff, contains ample evidence to support the jury's conclusion that the park district's conduct was of a willful and wanton character and not merely negligent as the majority suggests.
The majority's conclusion that the park district had no actual or constructive notice that the stake protruded above ground is simply unsupported by the facts. This conclusion can only be reached if one ignores the facts and puts common sense and reason aside. It is undisputed that it was park district surveyors that placed the permanent protruding stake in the ground in order to establish a base line and bench mark for both park district employees and contractors to do their work on the diamond. It was admitted by Lawrence Reagan, a 33-year park district employee and engineer, that the stakes were of no use at all unless they protruded from the ground. In addition, park district employees admitted that the home base area could not be mechanically dragged like much of the rest of a baseball diamond and therefore it needed to be hand-raked for debris and other hazards. In other words, someone had to physically inspect and clean the area around the stake. I fail to see how the park district can deny actual, constructive or any other imaginable form of notice. The evidence clearly demonstrates that the park district actually created the danger at issue in this case and thus it is absolutely incredible to claim lack of constructive notice as a defense. See Harding v. City of HighlandPark (1992), 228 Ill.App.3d 561, 169 Ill.Dec. 448, 591 N.E.2d 952; see also Muellman v. Chicago Park District (1992), 233 Ill.App.3d 1066, 175 Ill.Dec. 425, 600 N.E.2d 48 (Park district's conduct was willful and wanton when park user stepped into pipe without pipe lid when park district employees knew lids where being stolen and the lid at issue had been missing for a month).
In light of the foregoing, I would reverse the judgment of the circuit court, reinstate the jury's verdict and remand this cause for further proceedings consistent with the views expressed above.