NICOLE POMARO, Plaintiff-Appellant, v. COMMUNITY CONSOLIDATED SCHOOL DISTRICT 21, Defendant-Appellee.

First District (3rd Division)   No. 1—93—2343

Opinion filed December 27, 1995.—Rehearing denied March 8, 1996.·

TULLY, J., dissenting.

Joseph V. Roddy, of Chicago, for appellant.

James J. Desveaux, of Chicago, for appellee.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

On May 27, 1988, Nicole Pomaro (plaintiff) filed the instant action against Community Consolidated School District 21 (defendant) seeking damages for personal injuries sustained as a result of defendant's alleged wilful and wanton conduct in the maintenance of recreational property and inadequate supervision of a physical education class activity.

Defendant raised the defense of section 3—106 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act), which provides in relevant part that: "Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes *** unless such entity or public employee is guilty of willful and wanton conduct proximately causing such injury." (745 ILCS 10/3—106 (West 1992).) The trial court granted defendant's motion for summary judgment (735 ILCS 5/2—1005 (West 1992)) and, on *de novo* review, we affirm.

On April 21, 1980, plaintiff was enrolled in the fifth grade of Edgar Allen Poe School. On that day, plaintiff was participating in an outdoor physical education class under the supervision of physical education teacher Thomas Turner (Turner).

Turner instructed his fifth-grade class to run the 50-yard dash along yellow-painted lines designating lanes or running areas across the school's blacktop surface. The track was approximately 51 yards long and ended with a finish line approximately four feet before the blacktop met a grass field. The intervening four feet contained some loose and broken sections of asphalt.

The plaintiff and another student lined up at the "starting point" and commenced running at Turner's signal. As plaintiff and her competitor approached the finish line, "a kindergarten student *** ran onto the blacktop from the playground into plaintiff's path" and "plaintiff changed her direction on the blacktop so as not to collide with the kindergarten student." As a result, plaintiff was unable to completely stop her momentum, which carried her four feet beyond

the finish line and into the area of loose and broken asphalt. Plaintiff's foot lodged between two pieces of crumbled asphalt, causing her to fall and sustain serious personal injuries.

The defendant's conduct in proximately causing an injury must be wilful and wanton if the liability is predicated upon the existence of a condition upon property used or intended to be used for recreational purposes. (Ill. Rev. Stat. 1979, ch. 85, par. 3—106 (now 745 ILCS 10/3—106 (West 1992)).) It is clear that the site of the incident is "intended or permitted" to be used for recreational purposes. See *Bubb v. Springfield School District 186* (1995), 162 Ill. 2d 372 (young bicycle rider injured where sidewalk surrounding school was several inches higher than adjoining grassy area).

A plethora of recent cases has held that such situations do not support a finding of wilful and wanton conduct. This court affirmed a judgment notwithstanding the verdict where a baseball player was injured on a surveying stake while sliding into home plate (*Hernandez v. Chicago Park District* (1995), 274 Ill. App. 3d 970, 654 N.E.2d 463), summary judgment was entered against an outfielder who stepped into a rut chasing a fly ball (*Foley v. La Salle* (1993), 241 Ill. App. 3d 54, 608 N.E.2d 964), and summary judgment was entered against a basketball player injured when he stepped into a trench around an outdoor basketball court (*Oropeza v. Board of Education* (1992), 238 Ill. App. 3d 399, 606 N.E.2d 482). Similar results obtained in *Ramos v. Waukegan Community Unit School District No. 60* (1989), 188 Ill. App. 3d 1031, 544 N.E.2d 1302, for injuries incurred while skipping rope on a broken sidewalk and where plaintiff was injured by falling on broken glass during a touch football game on public recreational property (*Majewski v. Chicago Park District* (1988), 177 Ill. App. 3d 337, 532 N.E.2d 409).

Plaintiff is unsuccessful in her attempt to distinguish these cases. Plaintiff does, however, suggest that the cutting edge of this case is the conduct of the supervising gym teacher in setting the venue of the 50-yard dash with a finish line close to the broken asphalt. However, section 3—108 provides: "neither a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on or the use of any public property." (745 ILCS 10/3—108(a) (West 1992).) Hence, the same standard obtains for injuries caused by improper supervision as is appropriate for injuries sustained as a result of a dangerous condition. In *Knapp v. Hill* (1995), 276 Ill. App. 3d 376, the appellate court affirmed the dismissal of a complaint alleging that a teacher in an automotive shop class had failed to adequately supervise high school students who engaged in horseplay that ended in the death of one of the students.

Wilful and wanton conduct means "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." (745 ILCS 10/1—210 (West 1992).) Prior to 1994, the supreme court defined wilful and wanton conduct as going beyond mere inadvertence to require a conscious choice of a course of action, either with knowledge of the serious danger to others or with knowledge of facts that would disclose this danger to a reasonable person. (*Burke v. 12 Rothschild's Liquor Mart, Inc.* (1992), 148 Ill. 2d 429, 449, 593 N.E.2d 522.) *Burke's* definition adopted that contained in the Restatement (Second) of Torts, which observed a qualitative difference between negligence and wilful and wanton conduct in that wilful and wanton conduct carries a degree of opprobrium not found in merely negligent behavior. *Burke*, 148 Ill. 2d at 451-52.

Recently, the supreme court revisited the distinction, noted in *Burke*, between negligence and wilful and wanton conduct, recognizing that under "the facts of one case, willful and wanton misconduct may be only degrees more than ordinary negligence, while under the facts of another case, willful and wanton acts may be only degrees less than intentional wrongdoing." *Ziarko v. Soo Line R.R. Co.* (1994), 161 Ill. 2d 267, 275-76, 641 N.E.2d 402.

This "sliding-scale" approach marks a departure from *Burke's* placement of wilful and wanton conduct at or near intentional wrongdoing, recognizing that, on a case-by-case basis, wilful and wanton conduct may lie anywhere between the parameters of intentional misconduct and mere negligence. Though this approach permits a finding of wilful and wanton conduct on lesser grounds than those stated in *Burke*, it by no means mandates such a finding, leaving the determination to the discretion of the court or jury. The supreme court found further that a "wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care." *Ziarko*, 161 Ill. 2d at 273.

Neither the condition maintained by the school district nor the degree of supervision by the gym teacher provides a basis for a cause of action predicated upon wilful and wanton conduct of the defendant. There is even less reason to find defendant's conduct wilful and wanton when we add the factor of the kindergartner crossing the plaintiff's path and causing her to change course.

Moreover, the synergy of the facts that the defendant may have been negligent in allowing the asphalt to fall into disrepair *and* further negligent in supervision does not raise defendant's cumulative acts to wilful and wanton conduct.

We therefore affirm the trial court's entry of summary judgment because we do not believe that these facts rise to the level mandated by relevant precedent to overcome the heavy burden placed by the Tort Immunity Act upon those who seek to hold a governmental entity liable for certain injuries.

Affirmed.

CERDA, J., concurs.

JUSTICE TULLY, dissenting.

I cannot concur with the majority's conclusions in this case and, accordingly, I must respectfully dissent.

"The purpose of the summary judgment procedure is to permit the court to determine if there is any genuine issue of fact, but not to allow the court to decide factual issues." (*Kobus v. Formfit Co.* (1966), 35 Ill. 2d 533, 538, 221 N.E.2d 633.) The underlying policy is to facilitate litigation as the procedure's "benefits inure not only to the litigants, in the saving of time and expenses, but to the community in avoiding congestion of trial calendars and the expenses of unnecessary trials." (*Fooden v. Board of Governors of State Colleges & Universities* (1971), 48 Ill. 2d 580, 586, 272 N.E.2d 497.) "While use of the summary judgment procedure is to be encouraged as an aid in the expeditious disposition of a lawsuit [citation], *it is a drastic means of disposing of litigation and therefore should be allowed only when the right of the moving party is clear and free from doubt.* [Citations.] In determining the existence of a genuine issue of material fact, courts must consider the pleadings, depositions, admissions, exhibits, and affidavits on file in the case and *must construe them strictly against the movant and liberally in favor of the opponent.*" (Emphasis added.) (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867; see also *Murphy v. Urso* (1981), 88 Ill. 2d 444, 430 N.E.2d 1079.) "[W]hen an appellate court is faced with an appeal involving only the propriety of summary judgment, the *de novo* standard of review should be applied—the appellate court, like the trial court, determines whether there is a genuine issue of material fact." *Demos v. National Bank* (1991), 209 Ill. App. 3d 655, 659-60, 567 N.E.2d 1083.

At the time of the accident, section 3—106 of the Local Governmental and Governmental Employees Tort Immunity Act (the Act)

then provided that a local public entity, such as the school district, is not liable for an injury on a playground where liability is premised on the existence of a condition of the property "unless such local entity *** is guilty of willful and wanton negligence proximately causing such injury." (Ill. Rev. Stat. 1979, ch. 85, par. 3—106 (now codified, as amended, at 745 ILCS 10/3—106 (West 1994)).) Illinois law has used interchangeably the terms "willful and wanton negligence," "gross negligence," and "willful and wanton conduct." (*Ziarko v. Soo Line R.R. Co.* (1994), 161 Ill. 2d 267, 274-75, 641 N.E.2d 402.) Pursuant to section 1—210 of the Act, " '[w]illful and wanton conduct' *** means a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." (745 ILCS 10/1—210 (West 1994).) As the majority observed, our supreme court in *Ziarko* adopted a "sliding-scale" approach to what "willful and wanton conduct" is and liberalized the previous standard set forth in *Burke v. 12 Rothschild's Liquor Mart, Inc.* (1992), 148 Ill. 2d 429, 593 N.E.2d 522. (278 Ill. App. 3d at 269.) Thus, willful and wanton conduct is now "a hybrid between acts considered negligent and behavior found to be intentionally tortious." *Ziarko*, 161 Ill. 2d at 275.

After considering the evidence and its inferences *in a light most favorable to plaintiff*, I believe that the trial court improperly entered summary judgment in the case as there was evidence that defendant had actual or constructive knowledge of the crumbled asphalt and the danger it posed to its children.

With regard to the loose and broken sections of asphalt at issue in this case, defendant's director of operations testified that he personally inspected the asphalted areas of defendant's property semi-annually and that he personally inspected the asphalt at the Edgar Allen Poe School in preparation for the 1979-80 maintenance proposal. From this evidence alone, taken in a light most favorable to plaintiff, it is not unreasonable to infer that he knew or reasonably should have known of the danger of crumbled asphalt upon which children ran races. Additionally, plaintiff testified that the edge of the blacktop had been in poor condition for the entire year. Eileen Bluemling, another student at the Edgar Allen Poe School, confirmed this fact. Instead of safeguarding this child, defendant recklessly put her in harm's way. Any or all of these things taken together are sufficient facts which need to be submitted to a jury under *Ziarko* or *Burke*.

Accordingly, I would reverse the judgment of the circuit court of Cook County and remand this matter for further proceedings consistent with these views.