649 N.E.2d 493 (1995)
271 Ill.App.3d 843
208 Ill.Dec. 437
Paul E. MALONE and Laverne Malone, d/b/a Malone Farms, Plaintiffs-Appellants,
v.
AMERICAN CYANAMID COMPANY, a Maine Corporation, Defendant-Appellee.
No. 4-94-0811.
Appellate Court of Illinois, Fourth District.
Argued March 14, 1995.
Decided April 13, 1995.
Opinion Supplementing Decision on Denial of Rehearing May 19, 1995.
*494 Rex L. Brown, Gregory Mattingly (argued), Jeffery J. Hawkins, Brown, Hawkins, Basola & Mattingley, Decatur, IL, for Paul E. Malone.
Todd E. Bugg (argued), Costigan & Wollrab, P.C., Bloomington, IL, for American Cyanamid Co.
Justice STEIGMANN delivered the opinion of the court:
In May 1991, plaintiffs, Paul E. Malone and Laverne Malone, d/b/a Malone Farms, sued defendant, American Cyanamid Company, for breach of implied warranty of merchantability. Plaintiffs alleged that defendant manufactured, advertised, and sold herbicides under the trade names of "Prowl" and "Scepter," which defendant represented to be safe and effective means of controlling and eliminating weeds from bean crops. *495 Plaintiffs further alleged that in reliance upon defendant's advertisements and pamphlets, they purchased "Prowl" and "Scepter," used these herbicides on their land, and suffered a reduction in yield due to the herbicides' failure to control and destroy weeds in plaintiffs' bean crop.
In May 1994, defendant moved for summary judgment on the ground that section 136v(b) of the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) (7 U.S.C. § 136v(b) (1988)) preempted plaintiffs' cause of action. In June 1994, the trial court granted defendant's motion, and plaintiffs appeal.
We reverse and remand.

I. BACKGROUND
In May 1987, plaintiffs purchased "Prowl" and "Scepter" from a dealer, who applied them to plaintiffs' bean crop. Plaintiffs never saw the herbicide labeling or relied upon it. Plaintiffs based their decision to buy these particular herbicides upon claims made in certain advertisements distributed by defendant, but plaintiffs did not keep a copy of them.
Plaintiffs alleged these advertisements impliedly warranted that the herbicides were safe and effective methods for the control and elimination of certain weeds growing in a bean crop. Defendant allegedly breached this implied warranty of merchantability because the herbicides did not effectively control the weeds in plaintiffs' 1987 bean crop. As a result of the breach, plaintiffs claimed they sustained a significant reduction in the yield of their 1987 bean crop.
In defendant's May 1994 motion for summary judgment based upon FIFRA, defendant filed an affidavit in support of its motion stating that the herbicides used on plaintiffs' crop were marketed with labeling approved by the Environmental Protection Agency (EPA). Defendant attached a copy of that labeling to the affidavit.

II. ANALYSIS

A. Summary Judgment

A trial court properly grants summary judgment when the pleadings, depositions, and affidavits show no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. (735 ILCS 5/2-1005(c) (West 1992); see also Purtill v. Hess (1986), 111 Ill.2d 229, 240, 95 Ill.Dec. 305, 309, 489 N.E.2d 867, 871.) In construing a summary judgment motion, the trial court must view all evidence in the light most favorable to the nonmovant. (Gilbert v. Sycamore Municipal Hospital (1993), 156 Ill.2d 511, 518, 190 Ill.Dec. 758, 762, 622 N.E.2d 788, 792.) This court reviews the granting of summary judgment de novo. Golla v. General Motors Corp. (1994), 261 Ill.App.3d 143, 147, 198 Ill.Dec. 731, 734, 633 N.E.2d 193, 196.
On a defendant's motion for summary judgment, the plaintiff need not establish his case as he would at trial, but he must present some factual basis that would arguably entitle him to judgment. (West v. Deere & Co. (1991), 145 Ill.2d 177, 182, 164 Ill.Dec. 122, 124, 582 N.E.2d 685, 687; Northrop v. Lopatka (1993), 242 Ill.App.3d 1, 4, 182 Ill. Dec. 937, 940, 610 N.E.2d 806, 809.) If the party moving for summary judgment supplies facts which, if uncontradicted, would entitle it to judgment as a matter of law, the opponent to the motion cannot rely solely on his pleadings to raise issues of material fact. Thus, uncontradicted facts contained in the movant's affidavit are admitted and must be taken as true for purposes of the motion. (Purtill, 111 Ill.2d at 240-41, 95 Ill.Dec. at 309-10, 489 N.E.2d at 871-72.) However, the party opposing the motion need not file any counteraffidavits to create a material question of fact unless the moving party presents evidence that precludes any possible liability. (Motz v. Central National Bank (1983), 119 Ill.App.3d 601, 604-05, 75 Ill.Dec. 137, 140-41, 456 N.E.2d 958, 961-62.) Accordingly, a party opposing a motion for summary judgment may rely solely upon his pleadings to create a material question of fact until the movant supplies facts that would clearly entitle him to judgment as a matter of law.

B. Preemption Generally

The supremacy clause of the United States Constitution invalidates any State *496 law that interferes withor is contrary to Federal law. (See U.S. Const., art. VI.) Because of the supremacy clause, a State law conflicting with Federal law is preempted, or "without effect." (Maryland v. Louisiana (1981), 451 U.S. 725, 746, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576, 595.) Preemption analysis must begin with "the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." (Rice v. Santa Fe Elevator Corp. (1947), 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447, 1459.) Thus, Congressional intent is the "ultimate touchstone" of preemption analysis. (Cipollone v. Liggett Group, Inc. (1992), ___ U.S. ___, ___, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407, 422. As the Supreme Court recently stated in Cipollone:
"Congress' intent may be explicitly stated in the statute's language or implicitly contained in its structure and purpose.' Jones v. Rath Packing Co., 430 US 519, 525, 97 SCt 1305[, 1309], 51 L.Ed.2d 604, [614,] (1977). In the absence of an express congressional command, [S]tate law is preempted if that law actually conflicts with [F]ederal law, [citation], or if [F]ederal law so thoroughly occupies a legislative field `"as to make reasonable the inference that Congress left no room for the States to supplement it."` Fidelity Federal Savings & Loan Assn. v. De [de] la Cuesta, 458 US 141, 153, 102 S.Ct. 3014[, 3022,] 73 LEd2d 664 (1982) (quoting Rice v. Santa Fe Elevator Corp., 331 US [218], at 230, 91 L.Ed. 1447 [at 1459], 67 S.Ct. 1146 [at 1152]).
* * * * * *
* * * When Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a `reliable indicium of congressional intent with respect to state authority,' Malone v White Motor Corp., 435 US [497,] at 505, 55 LEd2d 443, 98 SCt 1185[, 1190] `there is no need to infer congressional intent to pre-empt state laws from the substantive provisions' of the legislation. California Federal Savings & Loan Assn. v Guerra, 479 US 272, 282, 93 LEd2d 613, 107 SCt 683[, 690] (1987) (opinion of Marshall, J.)." Cipollone, ___ U.S. at___, 112 S.Ct. at 2617-18, 120 L.Ed.2d at 422-23.
In Cipollone, the plaintiff, a woman who ultimately died of lung cancer after several years of smoking, sued several cigarette manufacturers under various State common law causes of action, including the failure to warn consumers of the hazards of smoking. The cigarette manufacturers contended that the following language in the Public Health Cigarette Smoking Act of 1969 (Cigarette Act) (see 15 U.S.C. §§ 1331 through 1340 (1988)), which mandated specific warnings on all cigarette packaging, preempted plaintiff's claims:
"No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this [Cigarette Act]." 15 U.S.C. § 1334(b) (1988).
The Court held that "[t]he phrase `[n]o requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common law rules." (Cipollone, ___ U.S. at ___, 112 S.Ct. at 2620, 120 L.Ed.2d at 426 (opinion of Stevens, J., joined by Rehnquist, C.J., and White and O'Connor, JJ.).) Interpreting the phrase "under State law" in this section of the Cigarette Act to include common law rules, the Court then held that the Cigarette Act preempted common law damages actions that constitute "a `requirement or prohibition based on smoking and health ... imposed under State law with respect to ... advertising or promotion.'" (Cipollone, ___ U.S. at ___, 112 S.Ct. at 2621, 120 L.Ed.2d at 427 (opinion of Stevens, J., joined by Rehnquist, C.J., and White and O'Connor, JJ.).) The Court relied upon this analysis in holding that the plaintiff's claims concerning the failure to warn were preempted insofar as they required a showing that the defendant's advertising should have included additional or more clearly stated warnings. Cipollone, ___ U.S. at___, 112 S.Ct. at 2621-22, 120 *497 L.Ed.2d at 427-28 (opinion of Stevens, J., joined by Rehnquist, C.J., and White and O'Connor, JJ.).
However, the Court emphasized that the preemption provision of the Cigarette Act did not preempt all common law claims. Instead, the Court stated that it must fairly but narrowly construe the preemption provision and look at each of the plaintiff's common law claims to determine whether it was preempted. For example, a breach of an express warranty action was not preempted by the Cigarette Act because a manufacturer's liability for the breach of an express warranty derives from the terms of that warranty. Accordingly, the "requirements" imposed by an express warranty are not normally imposed by State law, but rather by the warrantor. (See Cipollone, ___ U.S. at___, 112 S.Ct. at 2622, 120 L.Ed.2d at 428-29 (opinion of Stevens, J., joined by Rehnquist, C.J., and White and O'Connor, JJ.).) Justices Scalia and Thomas agreed that the Cigarette Act applied to common law actions, that the phrase "State law" included common law, and that the Cigarette Act preempted the plaintiff's failure to warn claims. However, they concluded that the Cigarette Act also preempted the plaintiff's breach of an express warranty claim. Cipollone, ___ U.S. at ___, 112 S.Ct. at 2634-37, 120 L.Ed.2d at 443-47 (Scalia, J., concurring in judgment in part and dissenting in part, joined by Thomas, J.).

C. Preemption Under FIFRA

Under FIFRA, a pesticide cannot be marketed unless it is registered and approved by the EPA. The registration process includes a review of the contents of the product's labeling. (See 7 U.S.C. § 136a (1988).) Section 136v(b) of title 7 of the United States Code, commonly referred to as section 24 of FIFRA, provides that a State may not "impose or continue in effect any requirements for labeling or packaging [herbicides] in addition to or different from those required under this subchapter." (Emphasis added.) 7 U.S.C. § 136v(b) (1988).
The Cipollone preemption analysis applies to FIFRA. In light of its decision in Cipollone, the Court subsequently vacated judgments in Papas v. Upjohn Co. (11th Cir. 1991), 926 F.2d 1019, and Arkansas-Platte & Gulf Partnership v. Van Waters & Rogers, Inc. (10th Cir.1992), 959 F.2d 158, which had held FIFRA impliedly preempted State failure to warn claims and remanded for those courts to reconsider. Papas v. Zoecon Corp. (1992), ___ U.S.___, 112 S.Ct. 3020, 120 L.Ed.2d 892; Arkansas-Platte & Gulf Partnership v. Dow Chemical Co. (1992), ___ U.S. ___, 113 S.Ct. 314, 121 L.Ed.2d 235.
On remand in Papas, the eleventh circuit held that pursuant to Cipollone, the term "requirements" in section 136v(b) included common law damage actions. (Papas v. Upjohn Co. (11th Cir.1993), 985 F.2d 516, 518 (Papas II).) The court concluded that FIFRA expressly preempts State common law actions against manufacturers of EPA-registered pesticides to the extent such actions are predicated upon claims of inadequate labeling or packaging, including allegations of failure to warn. (Papas II, 985 F.2d at 520.) Several other Federal appellate courts considering this issue have also reached the same conclusion. See Worm v. American Cyanamid Co. (4th Cir.1993), 5 F.3d 744, 747 (Worm II) (section 136v(b) preempts enforcement of any common law duty that would impose a labeling requirement inconsistent with those established by FIFRA); King v. E.I. Dupont De Nemours & Co. (1st Cir.1993), 996 F.2d 1346, 1349; Arkansas-Platte & Gulf Partnership v. Van Waters & Rogers, Inc. (10th Cir.1993), 981 F.2d 1177, 1179 (Arkansas-Platte II); MacDonald v. Monsanto Co. (5th Cir.1994), 27 F.3d 1021, 1024-25; Shaw v. Dow Brands, Inc. (7th Cir.1993), 994 F.2d 364, 371.
In Ferebee v. Chevron Chemical Co. (D.C.Cir.1984), 736 F.2d 1529, 1540-41, the court held that section 136v(b) did not impliedly preempt common law actions, but instead prohibited States from directly ordering changes in EPA-approved labels. However, Ferebee is of questionable validity because it was decided before Cipollone. See King, 996 F.2d at 1351; Shaw, 994 F.2d at 370; Stamps v. Collagen Corp. (5th Cir.1993), 984 F.2d 1416, 1424-25.
*498 Relying upon Cipollone, several courts have held that State law causes of action for breach of an implied warranty of merchantability are preempted by FIFRA to the extent they depend upon inadequacies in labeling or packaging. (Papas II, 985 F.2d at 520; Worm II, 5 F.3d at 748; Lowe v. Sporicidin International (4th Cir.1995), 47 F.3d 124, 129.) In Papas II, the court distinguished between an express warranty and an implied warranty of merchantability claim. As stated in Cipollone, express warranty claims are generally not preempted because the requirements imposed by the express warranty are not imposed under State law, but rather by the warrantor. However, the court in Papas II noted that implied warranties of merchantability arise by operation of law, citing the State of Florida's codification of the implied warranty of merchantability. Because State law created the implied warranty of merchantability, the court held that a claim premised upon it was preempted by FIFRA to the extent that it depended upon inadequacies in labeling or packaging. Papas II, 985 F.2d at 519-20; see also Higgins v. Monsanto Co. (N.D.N.Y.1994), 862 F.Supp. 751, 761-62; Jillson v. Vermont Log Buildings, Inc. (D.Mass.1994), 857 F.Supp. 985, 990-91; Sowers v. Johnson & Johnson Medical, Inc. (E.D.Pa.1994), 867 F.Supp. 306, 313; Bingham v. Terminix International Co., L.P. (S.D.Miss.1994), 850 F.Supp. 516, 522; In re DuPont-Benlate Litigation (D.P.R. 1994), 859 F.Supp. 619, 623; Roberson v. E.I. DuPont de Nemours & Co. (W.D.Ark.1994), 863 F.Supp. 929, 934; Kenepp v. American Edwards Laboratories (E.D.Pa.1994), 859 F.Supp. 809, 815.

D. FIFRA Preemption in this Case

In Illinois, the implied warranty of merchantability is imposed by State law pursuant to section 2-314 of the Illinois Uniform Commercial CodeSales (Code) (810 ILCS 5/2-314 (West 1992)). Therefore, because we agree with the analysis in Papas II, we hold that section 136v(b) preempts a breach of an implied warranty of merchantability cause of action premised on section 2-314 of the Code to the extent it relies upon inadequacies in the labeling or packaging of the defendant's product. However, plaintiffs in the present case argue that their cause of action is not preempted because it is based upon claims made in defendant's advertising of these herbicides, not in its labeling of them. We agree.
Plaintiffs' complaint alleged that they purchased "Prowl" and "Scepter" in reliance upon certain representations about the effectiveness of those products which defendant made in advertisements and in pamphlets it distributed to prospective customers, like plaintiffs. In their complaint, plaintiffs made no reference to any information set forth on the labels defendant put on those products, nor do plaintiffs claim to have relied upon those labels or to have been misled by them. Thus, the question before us becomes the following: did Congress intend, by enacting section 136v(b), to insulate a company like defendant, which manufactures and distributes herbicides, from any liability for an implied breach of warranty based upon claims made in that company's advertising? We hold that the answer is no.
The plain language of section 136v(b) that a State may not "impose or continue in effect any requirements for labeling or packaging [herbicides] in addition to or different from those required under this subchapter"says nothing, and implies nothing, about advertising. (7 U.S.C. § 136v(b) (1988).) Thus, in order for defendant to prevail on its claim that Congress intended by the language of section 136v(b) to sweep so broadly so as to include advertising, we would have to conclude that Congress is not capable of saying with precision what it means in this important area of preemption. However, we conclude that Cipollone contains the strongest refutation of that position.
In Cipollone, the Supreme Court analyzed section 1334(b) of the Cigarette Act to determine if Congress intended to preempt certain State common law causes of action based upon smoking, including the failure to warn consumers of the hazards of smoking. (See 15 U.S.C. § 1334(b) (1988).) The Court found preemption to exist based upon that section, and we deem significant that in § 1334(b) of the Cigarette Act, Congress saw fit to explicitly prohibit State law actions *499 "with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this [Cigarette Act]." (Emphasis added.) 15 U.S.C. § 1334(b) (1988).
Congress enacted the Cigarette Act in 1970 and thereby demonstrated its ability to specify "advertising or promotion" when it wished to preempt State common law causes of action based upon either. Although Congress enacted FIFRA in 1947, section 136v was not then part of it. Congress added that section in 1972 (Pub.L. 92-516, § 2, 86 Stat. 997), two years after having enacted the Cigarette Act. In doing so, however, Congress chose to limit FIFRA's preemption section to State actions regarding labeling or packaging. (See 7 U.S.C. § 136v(b) (1988).) We further note that Congress amended section 136v(b) in 1978 by substituting the language "labeling or packaging" and "required under" for "labeling and packaging" and "required pursuant to" (see Pub.L. 95-396, § 22, 92 Stat. 835), and again amended that section in 1988 by making a technical change (see Pub.L. 100-532, title VIII, § 801(m)(2), 102 Stat. 2682). Yet, in none of these amendments did Congress choose to broaden the section's scope from "labeling or packaging" to include "advertising or promotion." Accordingly, we conclude that Congress did not intend the broad sweep of language as defendant argues to include preemption of State common law actions for breach of implied warranty based upon advertising.

III. CONCLUSION
For the reasons stated, we reverse the trial court's entry of summary judgment and remand for further proceedings.
Reversed and remanded.
LUND and GREEN, JJ., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
Justice STEIGMANN delivered the opinion of the court:
Defendant has filed a petition for rehearing in which it argues that three new decisions dealing with Federal preemption require this court to reconsider and change its opinion in this case. The opinions defendant cites are the following: Freightliner Corporation v. Myrick (1995), ___ U.S.___, 115 S.Ct. 1483, 131 L.Ed.2d 385; Taylor Ag Industries v. Pure-Gro (9th Cir.1995), 54 F.3d 555; and Lowe v. Sporicidin International (4th Cir.1995), 47 F.3d 124. We have carefully considered each of these cases, view them as inapposite, and reaffirm our original opinion in this case.
LUND and GREEN, JJ., concurring.