NO. 4-00-0774

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE ILLINOIS STATE POLICE, 

          Plaintiff-Appellant,

          v.

THE FRATERNAL ORDER OF POLICE TROOPERS LODGE NO. 41,

          Defendant-Appellee.

)

)

)

)

)

)

)

)

  Appeal from

  Circuit Court of 

  Sangamon County

  No. 99MR331

  Honorable

  Thomas R. Appleton,

  Judge Presiding.

______________________________________________________________

JUSTICE COOK delivered the opinion of the court:

In August 1999, plaintiff, the Illinois State Police, filed a three-count complaint for vacatur of an arbitration award that sustained the grievances brought by defendant, the Fraternal Order of Police Troopers Lodge No. 41.  In April 2000, defendant filed a motion for summary judgment, and in June 2000, plaintiff filed a cross-motion for summary judgment.  After an August 2000 hearing on the summary judgment motions, the trial court granted defendant's motion for summary judgment and affirmed the arbitrator's decision.

On appeal, plaintiff argues that the trial court erred in granting summary judgment to defendant because (1) the arbitrator exceeded his authority by (a) ruling that plaintiff cannot interrogate its employees regarding criminal matters without first providing written notice and other protections afforded by the parties' collective-bargaining agreement (contract), and (b) ignoring the plain language of the contract; and (2) the arbitrator's award violates the public policies favoring (a) effective law enforcement and (b) equal protection.  We reverse and remand with directions.

I. BACKGROUND

Plaintiff maintains a division of internal investigation (Division) that is responsible for investigations, both criminal and noncriminal, of misconduct committed by plaintiff's employees.  The Division makes an initial assessment of the allegations and determines whether the case involves criminal conduct.  If criminal conduct is involved, then the investigation proceeds as a criminal investigation.  If no criminal conduct is involved, the Division investigates the case administratively.

In August 1994, plaintiff and defendant signed a contract that was effective from July 1, 1994, to June 30, 1997.  According to the parties, that agreement remained in effect until December 19, 1997, when the parties entered another collective-bargaining agreement.  Article 7 of the contract, entitled "Officer's Bill of Rights," provided guidelines for conducting investigations of nonprobationary officers where the investigation could result in "discipline."  Under article 7, an internal investigation cannot be conducted unless a file initiation report has been filed.  Furthermore, at least 24 hours prior to an interrogation, plaintiff must inform the officer of the following:

"(1) the identity of the officer conducting the interrogation; (2) the identity of all persons present during the interrogation; (3) the nature of the complaint and pertinent facts alleged; (4) the names of the complainants known at the time of the interrogation; (5) his statutory administrative proceedings rights if the allegation under investigation indicates that a recommendation for a discharge, demotion, or a suspension in excess of summary punishment is probable against that officer; and/or (6) his constitutional rights concerning self-incrimination if the allegation under investigation indicates that criminal prosecution is probable against that officer."

The officer is also entitled to have counsel present or defendant's representative present during the interrogation. 

In October 1997, Division officers interviewed Trooper Phil Krpan as part of a criminal investigation of allegations that Trooper Krpan and his wife were involved in an insurance fraud scheme.  At the beginning of the interview, Trooper Krpan signed a statement of constitutional rights and waiver form, acknowledging that he had been advised of his rights under 
Miranda v. Arizona
, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966)
.  Because the matter was a criminal investigation, the Division officers did not comply with article 7 of the contract.  At the conclusion of the investigation, the State did not file charges against Trooper Krpan, and plaintiff did not take any disciplinary action against Trooper Krpan.  That same month, Trooper Krpan submitted a grievance, claiming plaintiff violated the contract by interviewing him on October 8, 1997, as part of a criminal violation without following the procedures in sections 1 and 2 of article 7. 

Also, in October 1997, Division officers interviewed Trooper Travis Jones in a criminal investigation regarding inappropriate sexual relations with a 14-year-old girl.  Trooper Jones signed the statement of constitutional rights and waiver form, but plaintiffs did not afford him his article 7 rights.  During the interview, Trooper Jones made certain admissions regarding his sexual conduct with the minor.  

In March 1998, different Division officers again interviewed Trooper Jones regarding his conduct with the minor.  This time the investigation was an administrative matter, and plaintiff afforded Trooper Jones his article 7 rights.  Trooper Jones denied many of the allegations that he had admitted in the earlier interrogation.  Thus, the Division held another administrative interview in compliance with article 7.

Plaintiff later recommended that Trooper Jones be terminated and instituted proceedings with the State Police Merit Board (Merit Board).  In the Merit Board proceedings, Trooper Jones filed a motion to suppress his statements made during the criminal interview, which the Merit Board denied.  In February 1999, the Merit Board hearing officer issued findings of fact and conclusions of law, agreeing with plaintiff's recommendation to terminate Trooper Jones' employment.  The Merit Board adopted the hearing officer's decision. 

Trooper Jones appealed the Merit Board's decision.  In March 2000, the circuit court found that the Merit Board incorrectly denied Trooper Jones' motion to suppress, reversed the decision of the Merit Board, and remanded the case for a new hearing without the evidence from the criminal interview.  In June 2000, we denied leave to appeal.  
Jones v. Illinois State Police
, No. 4-00-0398 (June 27, 2000) (leave to appeal denied order unpublished under Supreme Court Rule 23).  The record on appeal does not indicate the result of the rehearing.

In October 1997, Trooper Travis Jones submitted a grievance similar to Trooper Krpan's, as to Jones' October 2, 1997, interview.  Pursuant to article 8 of the contract, defendant submitted the grievances to arbitration.  By agreement of the parties, the grievances were consolidated for a hearing before the arbitrator, Elliott Goldstein.
  The stipulated issues before the arbitrator were as follows:

"1) Whether [plaintiff] violated [a]rticle 7 of the [contract] in conducting the October 7, 1997[,] interview of Trooper Phil Krpan, and, if so, what is the appropriate remedy?

2) Whether [plaintiff] violated [a]rticle 7 of the [contract] in conducting the October 2, 1997[,] interview of Trooper Travis Jones, and, if so, what is the appropriate remedy?
"

On June 25, 1999, the arbitrator issued his opinion and award, sustaining the grievances and ordering plaintiff to (1) abide by the contract provisions governing the investigation and interrogation of officers pursuant to article 7 in all investigations and (2) compensate Trooper Jones for back pay and lost benefits from when he was placed on nonpay status until the Merit Board upheld the termination.  In his opinion, the arbitrator noted that no party disputed that plaintiff failed to follow the procedures set forth in sections 1 and 2 of article 7 of the contract in interviewing Troopers Jones and Krpan.

On August 27, 1999, plaintiff filed a complaint for vacatur of the arbitration award.  On October 1, 1999, defendant filed a counterclaim to enforce the arbitration award.  In April 2000, defendant filed both a motion to dismiss the second count of plaintiff's complaint pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 1998)) and a motion for summary judgment.  In June 2000, plaintiff filed a cross-motion for summary judgment.  In August 2000, the trial court granted defendant's motion for summary judgment, denied plaintiff's motion for summary judgment, and affirmed the arbitrator's decision.  This appeal followed.   

II. ANALYSIS

Summary judgment is appropriate when the pleadings, depositions, admissions, and affidavits demonstrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 1998); 
Rotzoll v. Overhead Door Corp.
, 289 Ill. App. 3d 410, 413, 681 N.E.2d 156, 158 (1997).
  In ruling on a motion for summary judgment, the trial court must view all evidence in the light most favorable to the nonmovant.  
Malone v. American Cyanamid Co.
, 271 Ill. App. 3d 843, 845, 649 N.E.2d 493, 495 (1995).
  
We review
 grants of summary judgment 
de
 
novo
.  
Malone
, 271 Ill. App. 3d at 845, 649 N.E.2d at 495.

We recognize that judicial review of an arbitration award is extremely limited.  
American Federation of State, County & Municipal Employees v. Department of Central Management Services
, 173 Ill. 2d 299, 304, 671 N.E.2d 668, 672 (1996) (
AFSCME I
).  Thus, a court is duty bound to enforce a labor-arbitration award if (1) the arbitrator acts within the scope of his or her authority and (2) the award draws its essence from the parties' collective-bargaining agreement.  
AFSCME I
, 173 Ill. 2d at 304-05, 671 N.E.2d at 672.  
In deciding whether an award draws its essence from the agreement, a court determines whether the arbitrator limited himself to interpreting the collective-bargaining agreement.  
Water Pipe Extension, Bureau of Engineering Laborers' Local 1092 v. City of Chicago
, 318 Ill. App. 3d 628, 637, 
741 N.E.2d 1093, 1100 (2000). 

Accordingly, any question regarding the interpretation of a collective-bargaining agreement is to be answered by the arbitrator.  Because the parties have contracted to have their disputes settled by an arbitrator, rather than by a judge, the parties have agreed to accept
 the arbitrator's view of the meaning of the contract.  We will not overrule that construction merely because our interpretation differs from that of the arbitrator.  
AFSCME I
, 173 Ill. 2d at 305, 671 N.E.2d at 672.
  However, we will disturb an arbitral award if it fails to derive its essence from the parties' collective-bargaining agreement.  
AFSCME I
, 173 Ill. 2d at 306, 671 N.E.2d at 673.

A. Arbitrator's Authority

Plaintiff argues that the arbitrator exceeded his authority by (1) ruling that plaintiff cannot interrogate its employees regarding criminal matters unless it complies with the contract and (2) ignoring the plain language of the contract.  We agree.

While judicial review of an arbitration award is limited, the arbitrator's ruling that plaintiff must comply with article 7 when interrogating employees regarding criminal matters was not drawn from the essence of the contract.  In article 4 of the contract, plaintiff retained all powers, rights, duties, and responsibilities traditionally recognized as belonging to it and vested in it by the laws and the Illinois Constitution, except as limited by the express and specific terms of the contract.  Plaintiff has a statutory duty
 to investigate the origins, activities, personnel, and incidents of crime and enforce the criminal laws of the state.  20 ILCS 2605/55a(A)(4)(a) (West 2000).  Thus, plaintiff's power can only be limited "by the express and specific terms of [the contract]."  Here, plaintiff did not specifically and expressly agree that article 7 would apply to criminal investigations.  In fact, the terms of article  7 suggest that they apply to disciplinary proceedings, not criminal investigations. 
    
 

Moreover, other language of the contract suggests that article 7 does not apply to criminal investigations.  Article 2 of the contract recognizes that defendant is the exclusive bargaining representative for all matters relating to the terms and conditions of employment.  Article 1 acknowledges that a purpose of the agreement is to provide "certain working conditions, rates of pay[,] and other terms and conditions of employment."  
Criminal matters are generally outside the employment relationship.  

Additionally, an employer cannot by contract give its employees procedural rights and benefits regarding criminal investigations.  The fact that the employer in this case is the Illinois State Police is immaterial.  Clearly, when plaintiff is investigating an employee's criminal conduct, it is acting under its statutory duty to enforce the laws of the State of Illinois (20 ILCS 2605/55a(A)(4)(a) (West 2000))
, not as an employer.   
  

Accordingly, we find that the arbitrator exceeded his authority, and thus the trial court erred in granting defendant's motion for summary judgment.  In view of our resolution of this issue, we need not address the remaining arguments, but we choose to address the following.

B. Public Policy

Plaintiff next argues that the arbitration award violates the well-defined public policies of effective law enforcement and equal protection.  
Even if an arbitration award is derived from the essence of the collective-bargaining agreement, we will vacate the award if it is repugnant to the established norms of public policy.  
AFSCME I
, 173 Ill. 2d at 306-07, 671 N.E.2d at 673
.
  Such vacatur is rooted in the common-law doctrine that a court may refuse to enforce contracts that violate law or public policy.  
Department of Central Management Services v. American Federation of State, County & Municipal Employees (AFSCME)
, 245 Ill. App. 3d 87, 93, 614 N.E.2d 513, 517 (1993) (
AFSCME II
). 

In determining if the arbitration award falls under the public policy exception, we apply a two-step analysis.  
AFSCME I
, 173 Ill. 2d at 307, 671 N.E.2d 
at 674.  The first question is whether a well-defined and dominant public policy can be identified.  
AFSCME I
, 173 Ill. 2d at 307, 671 N.E.2d 
at 674.
  If so, then the court must determine whether the arbitrator's award, as reflected in his interpretation of the agreement, violated the public policy.  
AFSCME I
, 173 Ill. 2d at 307, 671 N.E.2d 
at 674.
 

As to the initial inquiry, an established public policy unquestionably exists promoting effective law enforcement.  A state's public policy is found in its constitution, laws, and judicial decisions.  
AFSCME II
, 245 Ill. App. 3d at 94, 614 N.E.2d at 517.  The Supreme Court of Illinois has recognized a clear public policy favoring the investigation and prosecution of criminal offenses.  
Palmateer v. International Harvester Co.
, 85 Ill. 2d 124, 133, 421 N.E.2d 876, 880 (1981).  Such a policy of enforcing the State's criminal code is the most basic public policy implied in the concept of ordered liberty.  
Palmateer
, 85 Ill. 2d at 132, 421 N.E.2d
 at 879. 

Moreover, the public policy of effective law enforcement is demonstrated by the laws of this state.  To carry out its statutory duties to investigate the origins, activities, personnel, and incidents of crime and enforce the criminal laws (20 ILCS 2605/55a(A)(4)(a) (West 2000))
, plaintiff is required to employ skilled experts, scientists, technicians, and investigators, or otherwise specially qualified persons to aid in detecting crime and apprehending criminals.  20 ILCS 2605/2605-200(a)(3) (West 2000).

Inherent in effective law enforcement is the public policy favoring the exposure of crime.  See 
Velez v. Avis Rent A Car System, Inc.
, 308 Ill. App. 3d 923, 928, 721 N.E.2d 652, 656 (1999) (Illinois has a public policy that favors the exposure of crime).  As demonstrated by the statutes requiring skilled investigators, this public policy is well defined to protect the citizens of this state.

We next determine whether the arbitrator's award offends the public policy of effective law enforcement.  As demonstrated by the facts of Trooper Jones' case, the arbitrator's award, by requiring compliance with article 7 in criminal investigations, contravenes plaintiff's ability to investigate crimes.  There, Trooper Jones made admissions regarding his wrongdoing during the criminal investigations.  When interviewed in accordance with article 7, Trooper Jones' retracted his earlier statements and denied any wrongdoing.

Moreover, at the arbitration hearing, plaintiff presented the undisputed testimony that the element of surprise is very important in conducting criminal interrogation.  Complying with the administrative procedures under article 7 would be detrimental to conducting effective law enforcement.  

In support of its argument that applying interrogation guidelines to criminal investigations is not against public policy, defendant cites several statutes.  All three of these clearly apply, however, to interrogations as part of an administrative investigation, not a criminal one.

The first statute, section 14 of the State Police Act (20 ILCS 2610/14 (West 2000)), provides notice to employees prior to interrogations.  However, the statute specifically refers to interrogations serving as the basis for suspension, removal, or discharge, not criminal charges.  Section 10-1-18(b) of the Illinois Municipal Code (65 ILCS 5/10-1-18(b) (West 2000)) contains similar notice language and again refers to investigations serving the basis for removal or discharge.  This statute does not refer to criminal investigations.  The last statute, section 3.2 of the Uniform Peace Officers' Disciplinary Act (50 ILCS 725/3.2 (West 2000)), again provides certain notice requirements prior to an interrogation of an employee.  Section 2(d) of the same act expressly refers to an investigation in connection with an alleged violation of the agency's or unit's rules, not criminal laws.  50 ILCS 725/2(d) (West 2000).
 

Thus, the arbitrator's award requiring compliance with article 7 for criminal investigations violates the public policy of effective law enforcement.

In light of our holding, we need not address plaintiff's argument that the arbitrator's award violates the public policy of equal protection.

III. CONCLUSION

For the reasons stated, we reverse the trial court's grant of summary judgment and remand with directions for the trial court to grant plaintiff summary judgment and vacate the arbitration award.

Reversed and remanded with directions.

McCULLOUGH and TURNER, JJ., concur.