THE CITY OF NORTHLAKE, Plaintiff-Appellee, v. ILLINOIS FRATERNAL ORDER OF POLICE LABOR COUNCIL, Lodge 18, Defendant-Appellant.

First District (5th Division)    No. 1—01—0138

Opinion filed August 2, 2002.

John R. Roche, Jr., of Illinois Fraternal Order of Police Labor Council, of Western Springs, for appellant.

Burton S. Odelson and Amy E. Smith, both of Odelson & Sterk, Ltd., of Evergreen Park, for appellee.

JUSTICE REID delivered the opinion of the court:

Following the entry of an arbitration award, the City of Northlake (Northlake) filed a petition to vacate in the circuit court of Cook County. Both parties then filed motions for summary judgment. The circuit court reversed the decision of the arbitrator. The arbitrator's

award sustained several grievances contesting the amount of sick leave paid to the police officers upon separation from employment. The trial court vacated the arbitrator's award, holding that the arbitrator exceeded his authority.

Following the reversal by the trial court, the Illinois Fraternal Order of Police Labor Council, Lodge 18 (Union), filed the instant appeal, seeking to reverse the circuit court's order and confirm the arbitration award pursuant to the Uniform Arbitration Act (710 ILCS 5/1 *et seq.* (West 2000)). For the reasons that follow, we reverse the decision of the trial court and reinstate the award of the arbitrator.

## BACKGROUND

Northlake is a public employer under the Illinois Public Labor Relations Act (5 ILCS 315/3(o), 20(b) (West 2000)) (Act). Police employment is controlled by a collective bargaining agreement between the parties. The collective bargaining agreement (agreement) was negotiated pursuant to the Act. By the terms of the agreement between the parties, the Union is the exclusive bargaining representative for all sworn police officers below the rank of assistant chief employed by Northlake. The agreement contains a grievance procedure culminating in final and binding arbitration, as mandated by the Act.

In the instant matter, grievances were filed by the Union on behalf of six retired officers and one officer who left employment in good standing prior to reaching retirement age. Those police officers claim Northlake neglected to properly pay out their accumulated sick leave when they left their employment. The accumulated sick leave payout is governed by section 18.1 of the agreement, which reads as follows:

"Sick leave shall only be used for the purpose for which it was intended, that being, to provide an employee protection against loss of pay due to illness. Sick leave may not be converted into any other forms of compensation. *Accrued, unused sick leave will be forfeited, provided however, that employees who shall have ninety (90) or more days of accumulated sick leave, and who shall separate in good standing with the Employer, upon separation will be paid at their regular salary rate in a lump sum for all such accumulated leave up to a maximum of the equivalent of three (3) months pay. Therefore, it shall be required that thirty (30) days of accumulated sick leave be used for each one (1) month's equivalent* pay. If an employee has less than ninety (90) days accumulated sick leave, he shall receive a prorated one-thirtieth (¹/₃₀th) of one month's pay for each day of accumulated sick leave existing at that time." (Emphasis added.)

All of the police officers in question had 90 days of accumulated sick leave and left their employment in good standing. When they left

employment, Northlake paid them based upon a month's pay being a fraction of their annual wage. Northlake took the position that it is only required to pay 60 days of salary, which it views as the equivalent of two months' pay. Northlake arrived at this figure for two months of salary by dividing the annual salary by 12 and multiplying that amount by 3. Even though it could be argued that there are only 20 working days in a calendar month, Northlake stands firm that employee salary is calculated based upon an annual wage. The Union argues that a month is 20 working days for purposes of calculating the value of this type of sick leave.

The Union claims the parties resolved their grievances on May 28, 1998, at which time the Union and Northlake agreed that the employees would receive day-for-day pay, up to 90 days of their accumulated sick leave. The parties signed off on their agreement, using the following language:

> "INTENT—90 days of pay is equal to three (3) months of full pay, NOT sixty (60) days pay (as claimed in the pending grievance)."

The Union contends that, even though the above language was agreed to by both parties after the fact, it indicates Northlake's understanding and agreement to pay the officers the additional 30 days of full pay. The police officers claimed both the chief and assistant chief, in separate conversations, confirmed that this was the new understanding.

Northlake disputes the Union's claim that the parties resolved the dispute by signing a tentative agreement to a successor contract. Northlake claims the "intent" paragraph, which was not incorporated into a successor contract, includes a number of agreements made at the bargaining table after the contract at issue had expired. Northlake explains in its brief that the tentative agreement was negotiated for a new, subsequent contract which is not at issue in these proceedings. Northlake steadfastly refuses to disregard the traditional calendar and accept that a month is 20 days. Northlake also denies that it agreed to pay any additional amounts beyond those that the employees already received. Northlake further denies that the chief and assistant chief ever had conversations with anyone wherein Northlake agreed to pay more money.

Per the collective bargaining agreement, the matter was subsequently referred to binding arbitration. The arbitrator's award sustained several grievances contesting the amount of sick leave paid to the police officers upon separation from employment. The arbitrator considered the tentative agreement and concluded that the collective bargaining agreement should be interpreted along the lines of the Union's claim, that the agreement in force and effect constitutes a

promise to pay the grievants on a day-for-day basis. As a result, the arbitrator ordered Northlake to pay the remainder in question so that the grievants would have received the full 90 days of accumulated sick leave.

The arbitrator, in his report and decision, explains his rationale as follows:

"[T]he union also points to the tentative agreement ratified by the parties in May, 1998, and to testimony in which the City officials purportedly state that the Grievants would receive day for day pay, based upon a 20 day work month, and with the monthly salary being prorated over those 20 days. *** [T]he intent of the provision of the tentative agreement leaves me throughly bewildered. I do not know what was intended. The statement of 90 days being equivalent to three months of full pay, presumably 90 days sick leave authorization, IS just exactly what the City also claims. There is nowhere in the Agreement where a day's pay is calculated other than as a fraction of the annual wages. *** The tentative agreement, in and of itself, clarifies nothing.

However, combined with the testimony of the Union witness as to verbal agreements made at the time, it can be understood. In its way, it corroborates the testimony of the Union, that an agreement was made to pay the Grievants as the Union demanded that they be paid. However in-artful [sic] the language, there is in writing an agreement, totally inconsistent with what can be deduced from the Agreement, that is convincing evidence of an agreement outside the Contract to make specified payments to the Grievants. If this agreement were verbal only, the Parol evidence rule would apply, and the writing in the agreement would take precedence. Here, however, a negotiated agreement to vary from the terms of the Contract is established in writing and signed off on by the parties. It was ratified and binds the City. By itself, the tentative agreement is not clear; as written verification of an agreement made, it is most clear. While it would not be valid to vary the words of the agreement, it is clear evidence of an agreement on the part of the parties to settle a grievance, and as such, is clear evidence of an agreement on the part of the parties to settle a grievance, and as such, can, and hereby is, enforced.

It is found that the parties negotiated an agreement to pay the Grievants on a day for day basis, contrary to the specific terms of the Agreement. The Agreement was confirmed in writing, which writing was negotiated and signed off on by the parties. The grievances are therefore allowed."

The trial court, on cross-motions for summary judgment, vacated the arbitrator's award, holding that the order exceeded the authority

under the applicable statutes. In its ruling, the trial court made the following explanation of its reasoning:

"THE COURT: Well, it seems to me that the arbitrator did exceed his authority in this one. I mean, you have police officer who says a month is 20 days of work and the City says a month is 30 days of work, and it seems to me that it is a yearly contract. I think you take the yearly contract and divide it by 12. A month is a month. And I think he exceeded his authority in this one and therefore I am going to hold for the petitioner in this case and against the defendant. And I am going to reverse the arbitrator's decision and send it back for him to figure out. I don't even know if I have to send it back.

[NORTHLAKE]: No, because the police officers have all been paid according to the formula.

THE COURT: All right. Just reverse it and that will be it."

## ANALYSIS

This may well be a case of first impression in the State of Illinois. It is certainly a rarity, being a case where the parties to a collective bargaining agreement, in a doomed attempt to clarify and simplify the relations between them, enter into a properly negotiated settlement that is contrary to the terms of the agreement, but continue to litigate, ultimately blaming the arbitrator for accepting the settlement. We agree with the arbitrator that the claims were settled for the reasons stated in the arbitrator's report and decision and for the following reasons.

■ The purpose of summary judgment is to determine whether a triable question of fact exists. *Stahulak v. City of Chicago*, 291 Ill. App. 3d 824, 828 (1997), citing *Seeger v. Canale*, 241 Ill. App. 3d 177, 184 (1993). Summary judgment is appropriate when the pleadings, depositions, admissions and affidavits demonstrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2000); *State Police v. Fraternal Order of Police Troopers Lodge No. 41*, 323 Ill. App. 3d 322, 326 (2001), citing *Rotzoll v. Overhead Door Corp.*, 289 Ill. App. 3d 410, 413 (1997). In ruling on a motion for summary judgment, the trial court must view all evidence in the light most favorable to the non-movant. *State Police*, 323 Ill. App. 3d at 326, citing *Malone v. American Cyanamid Co.*, 271 Ill. App. 3d 843, 845 (1995). We review grants of summary judgment *de novo*. *State Police*, 323 Ill. App. 3d at 326, citing *Malone*, 271 Ill. App. 3d at 845.

■ The trial court's review of an arbitrator's award is extremely limited. *Illinois Nurses Ass'n v. Board of Trustees of the University of Illinois*, 318 Ill. App. 3d 519, 529 (2000), citing *American Federation of*

*State, County & Municipal Employees v. State of Illinois*, 124 Ill. 2d 246, 254 (1988) (*AFSCME*). The narrow scope of review available to us is, in part, a reflection of the legislature's intent in providing finality for labor disputes submitted to arbitration. *County of De Witt v. American Federation of State, County & Municipal Employees, Council 31*, 298 Ill. App. 3d 634, 637 (1998) (*De Witt*), citing *American Federation of State, County & Municipal Employees v. Department of Central Management Services*, 173 Ill. 2d 299, 304 (1996) (*CMS*). Arbitration awards should be construed, whenever possible, so as to uphold their validity. *7-Eleven, Inc. v. Dar*, 325 Ill. App. 3d 399, 404 (2001); *Stahulak*, 291 Ill. App. 3d at 833, citing *AFSCME*, 124 Ill. 2d at 254. The scope of an arbitrator's power generally depends upon what the parties agree to submit to arbitration. *Stahulak*, 291 Ill. App. 3d at 833, citing *AFSCME*, 124 Ill. 2d at 254. There is a presumption that the arbitrator did not exceed his or her authority. *7-Eleven*, 325 Ill. App. 3d at 404, citing *Ure v. Wangler Construction Co.*, 232 Ill. App. 3d 492, 496 (1992). If an award is within the submission and contains the honest decision of the arbitrator, after a full hearing, a court will not set it aside for error of law or fact. *7-Eleven*, 325 Ill. App. 3d at 404, citing *Ure*, 232 Ill. App. 3d at 496. "However, if all fair and reasonable minds would agree that the construction of the contract made by the arbitrator was not possible under a fair interpretation of the contract, then the court is bound to vacate or refuse to confirm the award. *7-Eleven*, 325 Ill. App. 3d at 404; see *Rauh v. Rockford Products Corp.*, 143 Ill. 2d 377, 391-92 (1991).

A court may not reverse an arbitrator's decision simply because it is contrary to the manifest weight of the evidence. *De Witt*, 298 Ill. App. 3d at 637; see 710 ILCS 5/12, 13 (West 2000) (circumstances where a court shall vacate and/or modify an award). Any question regarding the interpretation of a collective-bargaining agreement is to be answered by the arbitrator, and we will not overrule that construction merely because our interpretation differs from that of the arbitrator. *De Witt*, 298 Ill. App. 3d at 637. A labor arbitration award must be enforced if the arbitrator acts within his scope of authority and the award draws its essence from the parties' collective bargaining agreement. *Illinois Nurses*, 318 Ill. App. 3d at 529, citing *AFSCME*, 124 Ill. 2d at 254. "However, an arbitrator's award may not stand if it contravenes 'paramount considerations of public policy.' " *Illinois Nurses*, 318 Ill. App. 3d at 529, quoting *AFSCME*, 124 Ill. 2d at 260. "The public policy must be ' "well-defined and dominant" and ascertainable "by reference to the laws and legal precedents and not from generalized considerations of supposed public interests." ' " *Illinois Nurses*, 318 Ill. App. 3d at 529, quoting *CMS*, 173 Ill. 2d at 307, quot-

ing *W.R. Grace & Co. v. Local Union No. 759*, 461 U.S. 757, 766, 76 L. Ed. 2d 298, 307, 103 S. Ct. 2177, 2183 (1983). The public policy of a state must be determined by its constitution, laws and judicial decisions. *Illinois Nurses*, 318 Ill. App. 3d at 529, citing *AFSCME*, 124 Ill. 2d at 260. In deciding whether an award draws its essence from the agreement, a court determines whether the arbitrator limited himself to interpreting the collective bargaining agreement. *State Police*, 323 Ill. App. 3d at 327, citing *Water Pipe Extension, Bureau of Engineering Laborers' Local 1092 v. City of Chicago*, 318 Ill. App. 3d 628, 637 (2000).

The Union argues that the award does not violate the Uniform Arbitration Act or public policy and must, therefore, be confirmed. Because the Union and Northlake are parties to a collective bargaining agreement, the Union argues both parties have agreed to abide by the decision of the arbitrator. The Union argues that the arbitrator reviewed the contract and the evidence presented at the hearing. The arbitrator found that the parties had agreed in advance to resolve conflicts in a certain way. The Union claims the evidence was not rebutted at the hearing. The Union argues the parties agreed to pay day-for-day for the 90 accrued sick days. To comply with this, the Union argues that Northlake agreed to pay 30 days over the 60 days already paid.

Northlake responds and the trial court agreed that the arbitrator exceeded his authority. It argues that it complied with the terms of the labor contract as written. In calculating the amount owed to the police officers, Northlake argues it employed the plain meaning of the language of the agreement. Since Northlake police officers are paid monthly, and the agreement requires that the payout be "at their regular salary rate in a lump sum *** up to a maximum of the equivalent of three (3) months pay," the proper payout was three-twelfths of their annual salary. The computational equivalent, according to Northlake, is to take the amount of the annual salary and multiply it by 25%. Northlake argues that the plain language of the agreement mandates that "thirty (30) days of accumulated sick leave be used for each one (1) month of equivalent pay." Northlake claims the Union is asking this court to ignore the plain, unambiguous language of the agreement. According to the Union's position, it breaks down a month into 20 working days and 10 nonworking days. Since 20 working days multiplied by 3 months is 60 days and not 90, the Union claims it is entitled to pay for 30 more days. Northlake responds that it has never employed such a formula in calculating salary and the agreement has no language in it that would lead a reasonable person to that interpretation. Northlake points out that the arbitrator

concluded that the Union's formula would lead to an absurd result and indicated that section 18.1 of the agreement supports Northlake's position. Northlake next points out that the arbitrator incorrectly based his decision on the tentative agreement, the subsequent document signed during labor negotiations in contemplation of their next collective bargaining agreement. That tentative agreement, which indicated the parties' intent to have 90 days equal 3 months of pay and not 60 days, should not have been considered as it does not apply to the collective bargaining agreement at issue in these proceedings. Even though the arbitrator should not have used it, but did, the result is the same as if the arbitrator had used what Northlake claims is the plain, unambiguous language of the agreement.

The resolution of this case depends upon the answer to the question, for purposes of accumulated sick leave, "what constitutes 3 months' pay"? For clarity's sake, we choose to identify the competing theories of "monthly pay" argued by the parties as being either "actual work" or "calendar basis." Both theories are capped at the agreed-upon three months identified in the collective bargaining agreement. It would be easy to fixate on the calculations involved or, as the parties did, dwell on the number of months and somehow interpret the issue as a 20 versus 30 days question, thereby missing the forest for the trees. Hopefully, the following will, if nothing else, illustrate the need for precision in the drafting of collective bargaining agreements.

The Union champions the "actual work" theory. Under the "actual work" theory, the Union distinguishes between working and nonworking days. Whether salaried or hourly, an employee under the "actual work" theory would be entitled to a greater payout for accumulated sick time, because that employee's rate of pay would be higher, whether or not it is calculated hourly, weekly, biweekly or monthly. Once a rate of pay is calculated, under section 18.1 of the agreement, the employee's "actual work" rate of pay would be applied to the number of days he or she has in the sick day bank at the time of his or her separation from employment. This calculation is subject to the cap of the equivalent value of three months' pay.

A simpler form of calculation is advocated by Northlake. Under that theory, the employee's salary is divided by one-twelfth, to arrive at the "monthly pay." Without getting mired in mathematics, if no distinction is made between working and nonworking days, an employee would be entitled to less of a payout under Northlake's "calendar basis" theory. The employee would instead be entitled to the maximum of three-twelfths of his or her salary or the three months mentioned in section 18.1.

●4 The language in section 18.1 is ambiguous. The arbitrator found it so and we agree. The primary ambiguity is located in the sentence that says employees "upon separation will be paid at their regular salary rate in a lump sum for all such accumulated leave up to a maximum of the equivalent of three (3) months pay." "It is axiomatic that a court's principal goal in construing a contract is to ascertain and give effect to the parties' intent at the time they entered the contract." *Shields Pork Plus, Inc. v. Swiss Valley Ag Service*, 329 Ill. App. 3d 305, 310 (2002), citing *USG Corp. v. Sterling Plumbing Group, Inc.*, 247 Ill. App. 3d 316, 318 (1993). " '[W]hen the language used is susceptible to more than one meaning [citation] or is obscure in meaning through indefiniteness of expression [citation],' a contract is properly considered ambiguous." *Shields Pork Plus*, 329 Ill. App. 3d at 310, quoting *Wald v. Chicago Shippers Ass'n*, 175 Ill. App. 3d 607, 617 (1988). The determination of whether a contract is ambiguous is a question of law for the court. *Shields Pork Plus*, 329 Ill. App. 3d at 311, citing *Clay v. Illinois District Council of the Assemblies of God Church*, 275 Ill. App. 3d 971, 977 (1995), citing *Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill. 2d 281, 288 (1990). Once the court determines that the contract is ambiguous, parol evidence may be considered by the trier of fact in determining the parties' intent. *Shields Pork Plus*, 329 Ill. App. 3d at 311, citing *Rybicki v. Anesthesia & Analgesia Associates, Ltd.*, 246 Ill. App. 3d 290, 300-01 (1993).

●5 In this case, the arbitrator went outside the four corners of the agreement to resolve the case. He specifically found that the tentative agreement became necessary to explain what was intended between these parties. In examining the issues at hand, the arbitrator found that the parties settled their grievances.

In his report and decision, the arbitrator found that the "tentative agreement, in and of itself, clarifies nothing." However, the arbitrator found the evidence convincing that there was a negotiated settlement of these grievances between these parties. The arbitrator correctly points out that, while it cannot vary the words of the original agreement, the settlement is a clear, enforceable agreement to settle the grievances. We agree. Pursuant to this settlement, by which 90 days of accrued sick leave is converted to 3 months of full pay, the arbitrator found that the grievants were not paid enough. We find no basis for concluding that an arbitrator is unable to accept a properly negotiated, freely entered-into settlement that is dispositive of the issues between the parties. Since the arbitrator was acting within the scope of his authority in accepting the settlement, the trial court's decision to reverse it is error.

## CONCLUSION

In light of the foregoing, the judgment of the trial court is reversed and the arbitration award is hereby reinstated and confirmed.

Reversed.

CAMPBELL, P.J., and GREIMAN, J., concur.