# Illinois Official Reports

## Appellate Court

---

*City of Chicago v. Fraternal Order of Police*, 2019 IL App (1st) 172907

---

| | |
|---|---|
| Appellate Court Caption | THE CITY OF CHICAGO, Petitioner-Appellee, v. FRATERNAL ORDER OF POLICE, CHICAGO LODGE NO. 7, Respondent-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-17-2907 |
| Filed | March 29, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-CH-9793; the Hon. Sanjay T. Tailor, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Baum Sigman Auerbach & Neuman, Ltd., of Chicago (Pasquale A. Fioretto, Catherine M. Chapman, Brian C. Hlavin, and Patrick N. Ryan, of counsel), for appellant.<br><br>Edward N. Siskel, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Justin A. Houppert, Assistant Corporation Counsel, of counsel), for appellee. |
| Panel | JUSTICE LAMPKIN delivered the judgment of the court, with opinion.<br>Justices Hoffman and Hall concurred in the judgment and opinion. |

**OPINION**

¶ 1    The Fraternal Order of Police, Chicago Lodge No. 7 (FOP), appeals the circuit court's decision that granted the petition of the City of Chicago (City) to vacate an arbitration award that ordered the City to destroy records of alleged police misconduct that were more than five years old and denied the FOP's counterpetition to enforce the award.

¶ 2    The FOP argues that the circuit court erred as a matter of law by (1) holding that a well-established Illinois public policy required the preservation of governmental records; (2) holding that the award could not be enforced consistent with the Local Records Act (Local Act) (50 ILCS 205/1 *et seq.* (West 2016)), State Records Act (State Act) (5 ILCS 160/1 *et seq.* (West 2016)), or any public policy embodied therein or based on any other state law or public policy; and (3) not enforcing the award pursuant to the Illinois Public Labor Relations Act (Labor Act) (5 ILCS 315/1 *et seq.* (West 2016)) and the Uniform Arbitration Act (Arbitration Act) (710 ILCS 5/1 *et seq.* (West 2016)).

¶ 3    For the reasons that follow, we affirm the judgment of the circuit court that granted the City's petition to vacate the award and denied the FOP's counterpetition to enforce the same.[1]

¶ 4                   I. BACKGROUND

¶ 5    This appeal arises from grievances the FOP submitted in 2011 and 2012 to the Chicago Police Department (CPD) over the retention of disciplinary records older than five years, which retention the FOP claimed was in violation of section 8.4 of the 2007-12 collective bargaining agreement (CBA) between the FOP and the City.

¶ 6    The records at issue are complaint register files (CR files). CR files are produced in the course of investigations by the Civilian Office of Police Accountability (COPA) and the CPD's Bureau of Internal Affairs (Internal Affairs) of alleged misconduct by CPD officers. COPA and Internal Affairs had the authority to recommend to the CPD superintendent disciplinary action for violations of CPD rules and regulations.

¶ 7    The retention of disciplinary and investigation records like CR files was governed in the first CBA between the City and FOP, effective January 1, 1981, by a provision in section 8.4, which required the destruction of such records "five (5) years after the date of the incident or the date upon which the violation is discovered." Future CBAs continued to include some version of section 8.4, including the 2007-12 CBA at issue in this case, which provided, in relevant part:

> "All disciplinary investigation files, disciplinary history card entries, Independent Police Review Authority and Internal Affairs Division disciplinary records, and any other disciplinary record or summary of such record other than records related to Police Board cases, will be destroyed five (5) years after the date of the incident or the date upon which the violation is discovered, whichever is longer[.]"

¶ 8    The City's destruction of records pursuant to section 8.4 ceased following a federal court's 1991 order in a civil rights case, which required the City to cease destroying CR files. Thereafter, other federal district court judges began entering similar orders as a matter of

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

routine, and the City sought to eliminate section 8.4 from the CBA during negotiations with the FOP.

¶ 9     In 2012, the CPD denied both of the FOP's 2011 and 2012 grievances, and the FOP initiated arbitration.

¶ 10     Meanwhile, in October 2014, the City notified the FOP that the City intended to comply with requests under the Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2014)), from the Chicago Tribune and Chicago Sun-Times for CR files dating back to 1967. The FOP sought a preliminary injunction in the circuit court on the basis that disclosure of the CR files during arbitration would interfere with the FOP's ability to obtain relief in arbitration. In December 2014, the circuit court granted the FOP's request for a preliminary injunction barring the release of the CR files to maintain the status quo until the FOP's claims under the CBA were adjudicated. The City and Chicago Tribune filed separate interlocutory appeals challenging the preliminary injunction. In May 2015, the circuit court entered a second preliminary injunction enjoining the City from releasing any CR files more than four years old as of the date of the FOIA request, and the City filed an interlocutory appeal.

¶ 11     In December 2015, the United States Department of Justice (DOJ) opened an investigation into the CPD's use of force policies. The City informed the arbitrator of the pendency of the DOJ investigation and requested guidance on how the City should respond to the DOJ's requests for the production of misconduct and disciplinary records.

¶ 12     In January 2016, the arbitrator issued an opinion and interim award, which found that the City violated section 8.4 of the CBA and directed the parties to meet and attempt to establish a procedure for compliance.

¶ 13     In February 2016, an assistant United States attorney sent letters to the City specifically stating that, "for the duration of DOJ's pattern and practice investigation," the City and CPD must "preserve all existing documents related to all complaints of misconduct," including those that were the subject of the arbitration.

¶ 14     In April 2016, the arbitrator issued a second opinion and award, holding that, because of the DOJ's demand that the City preserve all records related to alleged officer misconduct, an order requiring destruction of such records would be against public policy. In June 2016, the arbitrator issued an order clarifying that public policy would not prevent enforcement of the initial January 2016 award once the DOJ had completed its investigation of the CPD.

¶ 15     On July 8, 2016, this court vacated the circuit court's 2014 and 2015 orders granting the FOP's preliminary injunction requests. This court found that, although the parties' CBA mandated destruction of CR files that were more than four years old, an arbitration award seeking enforcement of this provision would violate FOIA and the public policy underlying the General Assembly's adoption of the FOIA. Accordingly, this court held that there was no legal basis to enjoin the City and CPD from releasing the requested records in order to allow the FOP to pursue a legally unenforceable remedy at arbitration. *Fraternal Order of Police, Chicago Lodge No. 7 v. City of Chicago*, 2016 IL App (1st) 143884, ¶¶ 32-36.

¶ 16     On July 26, 2016, the City filed a petition in the circuit court to vacate the arbitration award on the grounds that it violated Illinois public policy favoring the proper retention of important public records. In August 2016, the FOP filed a counterpetition to confirm the arbitration award.

¶ 17 In January 2017, the DOJ issued its report. Among its conclusions, the DOJ found that section 8.4's "document destruction provision not only may impair the investigation of older misconduct, but also deprives CPD of important discipline and personnel documentation that will assist in monitoring historical patterns of misconduct." A local police accountability task force (Task Force) was also formed to evaluate the CPD's practices separately from the DOJ's investigation. The Task Force also concluded that section 8.4 was problematic and likely violated Illinois law. The Task Force stated, "Expunging records contradicts best practices, impedes the development of early intervention systems and deprives the public of information that is rightfully theirs." Further, the Task Force stated that "[i]t also deprives police oversight bodies of evidence of potential patterns of bad behavior," and "it may also deprive wrongfully convicted persons of exonerating information." The Task Force recommended that the "provision requiring destruction of records should be eliminated. The rule is in tension if not outright conflict with general principles of public record-keeping, and deprives the public of important information that is rightfully theirs and may include the destruction of information that serves numerous operational and public policy objectives."

¶ 18 In October 2017, the circuit court granted the City's petition to vacate the arbitration award and denied the FOP's counterpetition to enforce the award. The court concluded that "enforcement of the Arbitral Award violated a well-defined and dominant public policy to preserve government records." The court stated that,

> "[t]o hold otherwise would (i) violate the public policy of maintaining public records for the benefit of the municipality and the general public; (ii) infringe on the municipality and general public's ownership interest in public records; (iii) usurp the municipality's right to determine for itself what records are required for the transaction of business, including legal and administrative matters; and (iv) commandeer the authority of a local records commission as the exclusive arbiter of whether and what public records may be destroyed."

The court further stated that

> "destruction of important public records, such as the police disciplinary files at issue here, undermines principles of government transparency that are so vital to the preservation of the rule of law. If the City is to be responsive to the citizenry, it must have access to historical police disciplinary and investigative records to make better-informed decisions on policing, a point echoed in the DOJ and Task Force reports."

¶ 19 The FOP appealed.

¶ 20                                    II. ANALYSIS

¶ 21 On appeal, the FOP contends that the circuit court's order vacating the arbitration award and denying the FOP's counterpetition should be reversed because the court erred as a matter of law in holding that there is a well-established Illinois public policy requiring the preservation of governmental records. Alternatively the FOP contends the court erred as a matter of law by holding that the award could not be enforced consistent with the Local Act (50 ILCS 205/1 *et seq.* (West 2016)), the State Act (5 ILCS 160/1 *et seq.* (West 2016)), or any public policy embodied therein, or based on any other state law or public policy. The FOP also contends that the court erred by not enforcing the award pursuant to the Labor Act (5 ILCS

315/1 *et seq.* (West 2016)), and the Arbitration Act (710 ILCS 5/1 *et seq.* (West 2016)).

¶ 22                              A. The Public Policy Exception

¶ 23    A court's review of an arbitration award is extremely limited, and courts must construe arbitration awards, if possible, as valid. *American Federation of State, County & Municipal Employees v. State*, 124 Ill. 2d 246, 254 (1988). Where, as here, the arbitration involved a collective bargaining agreement, a court, consistent with section 12(e) of the Arbitration Act (710 ILCS 5/12(e) (West 2016)), will disturb the arbitration award only on the common-law grounds that existed prior to the enactment of the Arbitration Act, *i.e.*, "instances of fraud, corruption, partiality, misconduct, mistake, or failure to submit the question to arbitration." *American Federation of State, County & Municipal Employees v. Department of Central Management Services*, 173 Ill. 2d 299, 304 (1996) (*AFSCME 1996*).

> "The rationale for the limited review of an award interpreting a collective bargaining agreement is that the parties have contracted to have their disputes settled by an arbitrator, rather than by a judge. [Citation.] A labor arbitration award must be enforced if the arbitrator acts within his scope of authority and the award draws its essence from the parties' collective bargaining agreement. [Citation.]
>
> However, a court will vacate the award if it is repugnant to the established norms of public policy. [Citation.] The public policy exception is narrow and its successful invocation requires a clear showing that the award violates some explicit public policy. [Citation.] The contract as interpreted by the arbitrator must violate some explicit public policy that is well-defined and dominant and ascertainable by reference to the laws and legal precedents and not from generalized considerations of supposed public interest. [Citation.] Accordingly, the public policy of a state must be determined by its constitution, laws, and judicial decisions. [Citation.] ***
>
> To vacate an award under the public policy exception, this court is required to undertake a two-step analysis. The threshold question is whether a well-defined and dominant public policy can be identified. [Citation.] If so, the court must determine whether the arbitrator's award, as reflected in his interpretation of the agreement, violated public policy. [Citation.] As our supreme court has cautioned, although a rote recitation of the exception's two-prong test can be easily made, the exception's ultimate applicability to a case is necessarily fact dependent. [Citation.]" (Internal quotation marks omitted.) *Chicago Transit Authority v. Amalgamated Transit Union, Local 241*, 399 Ill. App. 3d 689, 695-96 (2010).

The question of whether an award violated public policy is one of law, which we review *de novo*. *City of Des Plaines v. Metropolitan Alliance of Police, Chapter No. 240*, 2015 IL App (1st) 140957, ¶ 20.

¶ 24                    B. The Existence of a Well-Defined Public Policy

¶ 25    To determine whether a public policy exists, a court considers Illinois's "constitution and *** statutes, and when cases arise concerning matters upon which they are silent, then *** its judicial decisions and the constant practice of the government officials." (Internal quotation marks omitted.) *AFSCME 1996*, 173 Ill. 2d at 307. In *AFSCME 1996*, the supreme court vacated as against public policy an arbitral award reinstating an employee of the Department of

Children and Family Services (DCFS), who had falsely stated that she had seen three children in DCFS custody and that they were "doing fine," when in fact they had perished in a fire. *Id.* at 301, 306. The court looked to various state statutes that collectively formed a "comprehensive legislative scheme designed for the welfare and protection of children found to be abused or neglected." *Id.* at 315. From this legislative scheme, the court determined that "there is a well-defined public policy in favor of truthful and accurate DCFS reporting and that the arbitral award in this case violates that policy." *Id.* at 308.

¶ 26    This court has followed *AFSCME 1996* to find public policies in other statutory frameworks that required vacating contrary arbitration awards. *E.g.*, *Chicago Fire Fighters Union Local No. 2 v. City of Chicago*, 323 Ill. App. 3d 168, 176-77 (2001) (recognizing public policy "favoring safe and effective fire protection services"); *Illinois Nurses Ass'n v. Board of Trustees of the University of Illinois*, 318 Ill. App. 3d 519, 530 (2000) (recognizing public policy "in favor of safe nursing care"); *State Police v. Fraternal Order of Police Troopers Lodge No. 41*, 323 Ill. App. 3d 322, 328-29 (2001) (recognizing public policy "promoting effective law enforcement"); *County of De Witt v. American Federation of State, County & Municipal Employees*, 298 Ill. App. 3d 634, 637-38 (1998) (recognizing public policy "to protect the elderly from abuse or harm"); *Board of Education of School District U-46 v. Illinois Educational Labor Relations Board*, 216 Ill. App. 3d 990, 1000-01 (1991) (recognizing public policy "favoring the safe transportation of school children").

¶ 27    The statutory framework the General Assembly constructed in the Local Act, the State Act, and FOIA establishes a well-defined public policy favoring the proper retention of important public records for access by the public. The Local Act, which applies to the City, directs that local public records "shall not be mutilated, destroyed, transferred, removed or otherwise damaged or disposed of, in whole or in part, except as provided by law." 50 ILCS 205/4(a) (West 2016). The Local Act then requires that "no public record shall be disposed of by any officer or agency unless the written approval of the appropriate Local Records Commission [(Commission)] is first obtained." *Id.* § 7. The law requires the Commission to issue binding regulations and procedures to "establish procedures for compiling and submitting to the Commission lists and schedules of public records proposed for disposal"; to regulate "the physical destruction or other disposition of such public records"; and manage the "preservation of electronically generated and maintained records"; and to create "standards for the reproduction of such public records by photography, microphotographic processes, or digitized electronic format." *Id.*

¶ 28    The Local Act further requires that the head of each local governmental agency submit to the Commission "lists or schedules of public records in his custody that are not needed in the transaction of current business and that do not have sufficient administrative, legal or fiscal value to warrant their further preservation" and "lists or schedules proposing the length of time each records series warrants retention for administrative, legal or fiscal purposes after it has been received by the agency." *Id.* § 10. The General Assembly vested in the Commission the ultimate authority to determine what records should be maintained or destroyed: "The Commission shall determine what public records have no administrative, legal, research or historical value and should be destroyed or otherwise disposed of and shall authorize destruction or other disposal thereof." *Id.*

¶ 29    The law also dictates that "[n]o public record shall be destroyed or otherwise disposed of by any Local Records Commission on its own initiative, nor contrary to law" (*id.*), and even

goes so far as to make it a Class 4 felony to "knowingly, without lawful authority and with the intent to defraud any party, public officer, or entity, alter[ ], destroy[ ], deface[ ], remove[ ], or conceal[ ] any public record." *Id.* § 4.

¶ 30 The State Act applies similar requirements to the maintenance and destruction of state records. 5 ILCS 160/1 *et seq.* (West 2016). In enacting the State Act, the legislature made its policy purposes explicit, stating,

> "[p]ursuant to the fundamental philosophy of the American constitutional form of government, it is declared to be the public policy of the State of Illinois (i) that government records are a form of property whose ownership lies with the citizens and with the State of Illinois; [and] (ii) that "those records are to be created, maintained, and administered in support of the rights of those citizens and the operation of the State." *Id.* § 1.5.

Further, "those records are, with very few exemptions, to be available for the use, benefit, and information of the citizens; and *** may not be disposed of without compliance to the regulations in this Act." *Id.*

¶ 31 In enacting FOIA, a similar explicit intent to ensure public access to important government documents was expressed:

> "Pursuant to the fundamental philosophy of the American constitutional form of government, it is declared to be the public policy of the State of Illinois that all persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of those who represent them as public officials and public employees consistent with the terms of this Act." 5 ILCS 140/1 (West 2016).

"Such access is necessary to enable the people to fulfill their duties of discussing public issues fully and freely, making informed political judgments and monitoring government to ensure that it is being conducted in the public interest." *Id.* Moreover, the General Assembly declared "that it is the public policy of the State of Illinois that access by all persons to public records promotes the transparency and accountability of public bodies at all levels of government," and "[i]t is a fundamental obligation of government to operate openly and provide public records as expediently and efficiently as possible in compliance with this Act." *Id.*

¶ 32 These statutes clearly show that Illinois recognizes a public policy favoring the proper retention of important government records for the benefit of the public. The Local Act and State Act mandate that the destruction of public records occur only after consideration by and with the approval of the head of the governmental agency and the Commission and in a well-regulated process established by the Commission. Those acts also reflect that public records belong to the public and expressly forbid the destruction of public records outside of those statutorily mandated processes. In addition, FOIA exists to ensure the public's access to records that have not been destroyed through those processes. The General Assembly declared the policies underlying these acts part of the "fundamental philosophy of the American constitutional form of government." *Id.* § 1; 5 ILCS 160/1.5 (West 2016).

¶ 33 The conclusions of the investigations by the DOJ and the Task Force further support a finding that public policy favors the maintenance of important public records like those related to allegations of police misconduct. The DOJ concluded that the CBA's document destruction provision not only might impair the investigation of older misconduct but also deprive the CPD of important discipline and personnel documentation that would assist in monitoring

historical patterns of misconduct. The Task Force concluded that the destruction provision contradicts Illinois law and best practices, impedes the development of early intervention systems, and deprives the public of information that is rightfully theirs. The Task Force also concluded that the destruction provision deprives police oversight bodies of evidence of potential patterns of bad behavior and may also deprive wrongfully convicted persons of exonerating information. The Task Force recommended the elimination of the provision requiring the destruction of records because it was in tension, if not outright conflict, with general principles of public record-keeping  and deprives the public of important information that is rightfully theirs and may include the destruction of information that serves numerous operational and public policy objectives.

¶ 34　　These statutes and other materials leave no doubt that Illinois has a well-defined public policy favoring the proper retention of important government records for the benefit of the public, like the CR files at issue here.

¶ 35　　　　　　　　　　C. Violation of a Well-Defined Public Policy

¶ 36　　The arbitration award requiring destruction of the records pursuant to section 8.4 of the CBA clearly violated well-defined Illinois public policy requiring the proper retention of important public records. The award ignored the requirements of the Local Act and obviates the local record commission's authority to determine what records should be destroyed or maintained. Further, the award required the City to destroy records related to alleged police misconduct without regard to the statute's explicit concerns for those records' "administrative, legal, research or historical value." 50 ILCS 205/10 (West 2016).

¶ 37　　The circuit court properly vacated this arbitration award because, as stated in the circuit court's October 2017 order, the arbitration award

> "(i) violate[d] the public policy of maintaining public records for the benefit of the municipality and the general public; (ii) infringe[d] on the municipality and general public's ownership interest in public records; (iii) usurp[ed] the municipality's right to determine for itself what records are required for the transaction of business, including legal and administrative matters; and (iv) commandeer[ed] the authority of a local records commission as the exclusive arbiter of whether and what public records may be destroyed."

¶ 38　　Based on our analysis above concerning the statutory framework constructed by the General Assembly's enactment of the Local Act, the State Act, and FOIA, which established a well-defined public policy favoring the proper retention of important public records for access by the public, we need not address the FOP's remaining assertions that the circuit court should have deemed the arbitration award enforceable as consistent with the Labor Act and Arbitration Act.

¶ 39　　　　　　　　　　　III. CONCLUSION

¶ 40　　For the foregoing reasons, we find that the arbitration award violated an explicit, well-defined, and dominant public policy requiring retention of important public records. Therefore, we affirm the judgment of the circuit court, which vacated the arbitration award and denied the FOP's counterpetition to enforce the award.

¶ 41        Affirmed.